WARDER, Respondent v. WARDER, Appellant

(203 N.W.2d 531)

(File No. 11199. Opinion filed January 23, 1973)

Martens, Goldsmith, May, Porter & Adam, Pierre, for defendant-appellant.

Whiting, Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for plaintiff-respondent.

WOLLMAN, Justice.

This is an appeal by defendant, Kathryn A. Warder, from an order granting the sole care, custody and control of her son, Robert A. Warder, Jr. (Robert, Jr.) to plaintiff, Robert A. Warder, the boy's father.

On May 21, 1970, plaintiff started an action for divorce against defendant. On June 23, 1970, plaintiff and defendant signed a stipulation and property settlement which stated in part that:

> "Defendant shall have the care, custody and control of the minor child of the parties hereto, namely, Robert A. Warder, Jr.; no territorial limitations. * * * the Court may adopt this Stipulation as a part of its Judgment."

This agreement also provided visitation rights to plaintiff. Robert, Jr. was then four years old. On July 23, 1970, the circuit court of

Pennington County, South Dakota, entered a judgment and decree of divorce granting plaintiff a divorce from defendant and adopting the above described stipulation and property settlement as a part of the order and judgment of the court.

Sometime prior to October 29, 1971, defendant and Robert, Jr. moved to Albuquerque, New Mexico, where defendant's father, a retired military officer, and mother resided. On October 29, 1971, defendant married one John Northrup. Thereafter defendant, John and Robert, Jr. moved to Albany, New York, where they lived with John's parents while John attended law school and defendant obtained employment. Difficulties soon resulted from these living arrangements and from other differences between defendant and her new husband. On January 5, 1972, defendant left John and thereafter became legally separated from him. In view of defendant's unfamiliarity with the city of Albany and its school system and because of the unsettled situation resulting from defendant's separation from John, defendant decided that it would be in Robert, Jr.'s best interests that she return him to the home of her parents in Albuquerque where he could continue his schooling in familiar circumstances and surroundings.

On June 6, 1972, Robert, Jr. arrived at plaintiff's home in Rapid City to remain with him for the summer months in accordance with the visitation agreement set forth in the stipulation and property settlement agreement. On July 31, 1972, plaintiff filed an affidavit asking that defendant be ordered to show cause why the primary care, custody and control of Robert, Jr. "* * * should not be repositioned in affiant prior to the commencement of the next school year." In addition to relating the facts concerning defendant's change of residence and marital status and the change of temporary custody of Robert, Jr., the affidavit charged that defendant had avowed to living separate and apart from Robert, Jr. and that plaintiff had been instructed to return Robert, Jr. to Albuquerque, New Mexico, to live with his maternal grandparents.

Defendant's counter-affidavit stated that she was employed in Albany, New York, at an annual salary of $10,000 per year;

that she had rented an apartment for herself and her son; and that she had made arrangements for enrolling Robert, Jr. in school and had made arrangements for competent and qualified babysitters for such time as defendant might be at work and her son not in school.

Plaintiff's reply affidavit stated, among other things, that defendant intended to return to the home of her parents with Robert, Jr. Attached to this affidavit were letters from defendant to plaintiff dated January 28, 1972 and April 11, 1972, the latter stating that defendant was not planning to bring Robert, Jr. to Albany inasmuch as defendant would be completing her job by the November 7, 1972 election, and that it appeared as though she would then return to Albuquerque to be with Robert, Jr. There was also attached to the affidavit a psychological evaluation report concerning Robert, Jr. from a psychologist in Rapid City, South Dakota.

On September 14, 1972, the circuit court entered an order which modified the custody provisions of the July 23, 1970 decree of divorce by granting the sole care, custody and control of Robert, Jr. to plaintiff for and during the period and term of the 1972-1973 school year. The order provided further that at the end of the 1972-1973 school year the court would, upon proper application, reconsider and review custodial rights.

█ Because the evidence upon which the order modifying custodial rights was submitted entirely by affidavits and written exhibits, our review of the trial court's decision is not limited by the usual weight given to factual determinations based upon the observation of the demeanor of witnesses. Davis v. Interstate Motor Carriers Agency, 85 S.D. 101, 178 N.W.2d 204; George A. Clark & Son, Inc. v. Nold, 85 S.D. 468, 185 N.W.2d 677.

█ The burden was upon plaintiff to show a material and substantial change of circumstances occurring after July 23, 1970, affecting the welfare of Robert, Jr. to a substantial or material extent. Huckfeldt v. Huckfeldt, 82 S.D. 344, 146 N.W.2d 57; Dornbusch v. Dornbusch, 83 S.D. 524, 162 N.W.2d 283. This plaintiff has failed to do. On June 23, 1970, plaintiff was willing

to stipulate and have the court adopt as a part of its judgment that defendant should have the care, custody and control of Robert, Jr. with no territorial limitations on said right. Presumably this right of custody extended from Rapid City, South Dakota, to Albuquerque, New Mexico and to Albany, New York. The most that can be said about plaintiff's showing is that it indicates that defendant made an unfortunate second marriage, as a result of which defendant took such action as she deemed would be in her son's best interests until her personal situation stabilized and returned to more normal circumstances.

The psychologist's report indicates that Robert, Jr. is a happy, well developed, intelligent, well adjusted child who, although he displays a normal degree of separation anxiety from his mother, appears to be happy in the home of his father and his father's second wife. He performed well on the various tests given to him and showed an advanced proficiency in both reading and arithmetic. His apperceptions on the projective personality test responses generally included a stable, secure and nonstressful milieu. The report, apparently admitted without objection on the part of defendant, is as significant for what it does not say as for what it does say. While it indicates that Robert, Jr. has adjusted well in his father's home, nowhere does it state that he has suffered any serious adverse physical or emotional consequences as a result of being in his mother's custody or in the temporary custody of his maternal grandparents during any of the times here in question.

In summary, then, we conclude that although there was some change shown in the circumstances of Robert, Jr.'s custody, as indeed there would be in any case in which the mother of a young child remarries and then experiences subsequent marital difficulties, together with the normal anxieties and dislocations attendant upon a transcontinental change in residence, these changed conditions fall short of warranting a change in custodial rights. Consequently, we hold that the trial court erred in modifying the divorce decree and order of custody entered on July 23, 1970.

We have considered defendant's assignments of error concerning the denial of her claim for back support payments

and for attorney's fees in this proceeding and we conclude that the trial court did not err with respect to the disposition of these matters. We hold, however, that defendant should be awarded $200 attorney's fees for the proceedings on this appeal.

The order modifying the divorce decree and custody order of July 23, 1970 is reversed. Defendant is awarded $200 attorney's fees for this appeal in addition to the usual costs.

All the Justices concur.