In re the MARRIAGE OF Kelly Ann WELBES and Kent Richard Welbes, Upon the Petition of Kelly Ann Welbes, Appellant,

and

concerning Kent Richard Welbes, Appellee.

No. 67616.

Supreme Court of Iowa.

Dec. 22, 1982.

Sharon A. Mellon of Mellon & Spies, Iowa City, for appellant.

Morris L. Eckhart of Milroy & Eckhart, Vinton, and Gregory M. Lederer of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

LeGRAND, Justice.

This appeal presents only one issue, the right to custody of Holly JoAnn Welbes, minor daughter of the parties. This issue was resolved in favor of the respondent-father, Kent Richard Welbes, by both the trial court and the court of appeals. We granted further review, and we too affirm the award of custody to Kent with one modification regarding visitation.

The trouble with cases like this is that no result is entirely satisfactory. When the family unit is dissolved, the problem of child custody can only be partially resolved at best. Frequently, as here, we must choose between parents when there is little basis upon which to make a choice.

Kelly Ann Welbes and Kent Richard Welbes were married on February 11, 1978, when they were eighteen and twenty years old respectively. Their only child, Holly JoAnn, was almost two years old when Kelly filed her petition for dissolution on May 23, 1980. The marriage had been a stormy one. Apparently neither party was ready to accept the responsibilities of marriage, particularly Kent, who left the caring of the home and the child almost entirely to his wife. If we were basing our decision on circumstances as they existed early in the marriage and immediately after Holly's birth, we would have no hesitancy in awarding custody to Kelly. However, these conditions have changed. Kent has become more responsible and Kelly less.

Shortly after Holly's birth, Kent left the family and went to Florida. He maintained no contact with his wife and showed little interest in Holly's welfare. He says he left home because he could not stand to see his wife running around with other men. Regardless of the reason, however, it is undisputed that he stayed away for approximately eight or nine months, leaving his family to fend for itself.

Certainly this conduct was indefensible and perhaps, as Kelly claims, was responsible for some of her own actions, about which Kent now complains. Be that as it may, however, our task is to decide who is best able to care for Holly now, not whose actions were more censurable in the past.

Since Kent's return from Florida, he has taken a great interest in Holly. Shortly after his return, the parties stipulated to temporary joint custody, which continued until the dissolution decree filed on October 8, 1981. During that period, Kent showed both a willingness and an ability to care for his daughter. The decree awarded Holly's custody to Kent. Kelly is appealing from that award.

■ The controlling consideration in determining custody is the best interests of the child. Iowa R.App.P. 14(f)(15). In deciding this question we review the record de novo. Iowa R.App.P. 4. We give weight to the findings of the trial court but are not bound by them. *In re Marriage of Novak,* 220 N.W.2d 592, 597 (Iowa 1974). There is no inference favoring one party as opposed to the other in deciding which one should have custody. *In re Marriage of Bowen,* 219 N.W.2d 683, 688 (Iowa 1974). We determine each case on its own facts to decide which parent can administer more effectively to the long-range interests of the child. *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974).

In the present case the trial court found, and we agree, that both parties love the child and each is capable of providing her with a good home and proper environment. We believe, however, that Kent is more likely to provide a stable atmosphere for Holly and that her best interests lie with him.

■ Kelly's present lifestyle offers no great hope of providing a proper influence for her daughter. While Kelly has had the child, she has been committed largely to the care of babysitters. Kelly admittedly drinks quite heavily and is given to frequent intoxication. She has had numerous overnight male guests, although this probably has not yet had an adverse effect on Holly because of her tender age. Although this conduct is not determinative, it is a factor to be considered along with other circumstances. *In re Marriage of Morten,* 244 N.W.2d 819, 821–22 (Iowa 1976); *In re Marriage of Forest,* 201 N.W.2d 728, 729 (Iowa 1972).

On the other hand, when Kent had Holly, he assumed the responsibility of caring for her with the assistance of his parents. His parents took over much of the physical care and day-to-day control. They are both able and willing to continue this relationship. Holly has rarely been left with babysitters and has had the care and attention of both her father and her grandparents. We are convinced this arrangement offers the best hope for Holly's future. The home she had and the care she received while there are superior to the conditions which Kelly is presently able to provide. This is not a criticism of Kelly, but merely a conclusion as to where the child's best interests lie.

■ Kelly points to the fact that the grandparents, rather than Kent, will have much of Holly's care. She apparently sees this as a reason to deny Kent custody. We take the opposite view. No matter which parent has custody, Holly is foredoomed to get much of her care and early training from others. Since this is true, we believe the grandparents are to be preferred over the ministrations of strangers.

■ Kelly argues there is no assurance Kent will stay in Iowa or, if he does, that he will continue to live with his parents. We recognize these possibilities. We should not, however, foreclose in advance the right of a custodial parent to move elsewhere. All we can do is to protect the rights of the non-custodial parent in such an event. Kent is a carpenter by trade. At the time of trial, economic conditions made it difficult for him to find work. He believes he has greater employment opportunities in Florida. He insisted he prefers living in Iowa and would stay here if he could make a living. These matters are inherent in every family break-up, and the problems they create can be dealt with only as they

arise. The trial court decree forbids Holly's permanent removal from this state except by order of court. We take this to mean only after notice to Kelly and a hearing on Kent's application. Thus Kelly will have the opportunity to resist Kent's request and to show why he should not be permitted to remove Holly permanently from the state.

■ We agree with the trial court and the court of appeals that Kent should have custody. We believe, too, that the visitation rights set out in the decree are quite liberal. Kelly has requested additional visitation rights. We are not inclined to disturb the visitation schedule established by the decree except for one minor modification to which Kent has agreed. The decree provides Kelly should have weekend visitation the second and fourth weekends of each month. That provision is changed to allow Kelly to have Holly every other weekend from Friday at 6:00 P.M. to Sunday at 6:00 P.M.

Kelly asks attorney fees for services rendered by her attorney on this appeal. The parties stipulated to payment of their own attorney fees in the trial court. We believe this arrangement should continue, and Kelly's application is denied. Costs on appeal are assessed one-half to each party.

During pendency of this appeal, we ordered a stay of the provisions regarding custody. That stay order is now dissolved.

AFFIRMED AS MODIFIED.

All Justices concur except McCORMICK, HARRIS and SCHULTZ, JJ., who dissent, and CARTER, J., who takes no part.

McCORMICK, Justice (dissenting).

Kelly has had the sole responsibility for the day-to-day care of Holly since the child's birth, except for the period of joint custody for a few months before trial. Even during that period Kent lived with his parents, and they provided the bulk of Holly's care on the days when Kent had custody. Kent has never demonstrated either an ability or willingness to accept the responsibilities of parenting on a sustained day-to-day basis. The most he has shown is that he will help his parents care for Holly when it does not interfere with his otherwise self-indulgent pursuits.

Even though Kelly engaged in conduct like Kent's after the parties separated, she has demonstrated an ability and willingness to accept parenting responsibilities. I do not believe the record establishes that her behavior after the failure of the marriage was other than an aberration based on that event. In the long range, she is more likely than Kent to minister effectively to Holly's best interests.

The court does not award custody to the paternal grandparents but nevertheless treats their care of Holly as a vital feature of the decision. The problem with this is that no reason exists for believing Kent will continue to reside in his parents' home one moment longer than will be convenient for him in the light of his own record of erratic and irresponsible behavior.

I would award Holly's custody to Kelly.

HARRIS and SCHULTZ, JJ., join this dissent.