PROCEDURAL HISTORY/FACTS
C.M.H. (mother), appeals from (1) an Order of Adjudication which adjudged mother's children to be dependent and neglected, (2) an Interim Decree of Disposition which placed temporary custody of one of *Page 55 
mother's five children with that child's natural father, and (3) a Decree of Disposition which granted custody of this child to its natural father. Mother's rights were not terminated. We affirm.
Mother and C.W.H. (first husband), were married in Nevada in 1976. Prior to this marriage, however, G.H. was born on November 15, 1976. After this marriage, V.H. was born on December 7, 1977, and A.H. was born on February 24, 1981. In 1982, mother and C.W.H. were divorced in California. Mother was awarded custody of G.H., V.H., and A.H.[1]
Mother and D.H. (who became her second husband), began a relationship prior to mother's divorce and on July 21, 1982, N.H. was born. Thereafter, and in November 1982, mother and D.H. were married.
This second marriage and relationship, however, proved unstable and after its inception and until October 1983, separations were frequent and extended. During this time, mother and her four children, and occasionally D.H., resided in various shelters, motels, apartments, rented houses, and homes of friends, relatives and acquaintances in California, Texas, Utah, and Oregon.
In October 1983, mother and second husband separated permanently. Thereafter, and until April 1984, mother and her children moved frequently without the benefit of apparent prior planning. They lived in battered women's shelters, rental properties, church-affiliated shelter homes, shelters for indigents, and homes of friends, relatives, and acquaintances in some fourteen cities in California, Indiana, Florida, Mississippi, Texas, Colorado, and South Dakota.[2] It appears that every time a problem arose, mother and the children would move without any forethought. During this time, the oldest children were enrolled in school intermittently and such enrollment had a short duration.
In 1984, mother and D.H. were divorced in California and both were awarded joint legal custody of N.H., with physical custody being awarded to mother. In April of that same year, mother was arrested in Meade County, South Dakota, for possession of a stolen motor vehicle. The automobile was rented and never returned, but no prosecution ever resulted from this incident. At the time of her arrest, mother was heading to Denver, colorado.
Following mother's apprehension, the South Dakota Department of Social Services investigated the children's possible dependency and neglect, and a Juvenile Petition alleging the same was filed on April 19, 1984. A Temporary Custody Order was issued that same date placing temporary custody of the children with the Department of Social Services (Department). When the Department attempted to procure the children's custody, mother, who was then residing with an acquaintance in Piedmont, South Dakota, locked herself and her children in a room and threatened to kill herself and her children. The Department, however, eventually procured custody of the children and they were then placed in foster homes.
In early May 1984, mother attempted to remove two of the children from their foster home in Rapid City. During this attempt, mother physically assaulted the custodial foster mother. Thereafter, a Restraining Order was issued restraining mother from any contact with her children.
An adjudicatory hearing was thereafter held, and based on the proceedings therein, the circuit court determined by an Order of Adjudication dated September 13, 1984, that clear and convincing evidence established that they were dependent and neglected in that they lacked proper parental care through the actions or omissions of mother. SDCL 26-8-6(2). An interim dispositional hearing was then held, and by an Interim Decree of Disposition dated October *Page 56 
5, 1984, the children's legal custody was granted to the Department. Temporary physical custody of G.H., V.H., and A.H., however, was placed with mother. However, temporary custody of N.H. was placed with the child's father, D.H., who resided in Modesto, California. This concept of split custody in a sibling group weighs heavily in this appeal.
Various programs were then instituted so as to counsel mother and father and improve their parenting skills. Through these programs and counseling, their parenting skills and awareness were greatly improved and their separate family lives stabilized. In March 1985, mother gave birth to a baby boy who is not involved in these proceedings. The father of this new child appears to be C.W.H., the father of the three oldest children. Thus, at the time of the dispositional hearing, mother had custody and control of four children, G.H., V.H., A.H., and the newborn child.
A dispositional hearing was conducted on May 13-15, 1985, in Sturgis, Meade County, South Dakota. By a Decree of Disposition, the circuit court granted D.H. (father of N.H.), legal and physical custody of N.H.; mother was granted legal and physical custody of G.H., V.H., and A.H. Mother's parental rights were not terminated. In so granting D.H. the custody of N.H., the circuit court noted that siblings should generally be raised together absent compelling reasons to the contrary, but that the general rule should not be detrimentally enforced contrary to the best interests of any individual child. The circuit court also noted that the least restrictive alternatives, in keeping with N.H.'s best interests, were greater in number and scope than the other children's; further, that the potential for fulfillment of N.H.'s temporal, mental, and moral welfare was greater if custody was granted unto the father, rather than residing with his mother and siblings. Thus, the circuit court concluded that N.H.'s best interests, with due regard for mother's and the public's rights and interests, required placement with the father and that such placement was the least restrictive alternative.
From the Order of Adjudication, the Interim Decree of Disposition, and the Decree of Disposition, mother now appeals.
 DECISION I.
THE TRIAL COURT DID NOT CLEARLY ERR IN ADJUDGING THE CHILDREN TO BE DEPENDENT AND NEGLECTED.
In adjudicatory hearings in circuit court, the standard of proof is the clear and convincing evidence standard. SDCL 26-8-22.10; In re D.B., 382 N.W.2d 419, 421 (S.D. 1986); In reM.W., 374 N.W.2d 889, 894 (S.D. 1985). When we review a dependency and neglect adjudication, we must determine whether the findings of the circuit court are clearly erroneous. SDCL15-6-52(a); In re H.L., Jr., 386 N.W.2d 495, 499 (S.D. 1986); Inre A.M.L., 371 N.W.2d 358, 359 (S.D. 1985). The question thus presented for our determination is not whether we would have made the same findings as the circuit court, but whether we are left with a definite and firm conviction that a mistake has been made.In re D.M., 367 N.W.2d 769, 772 (S.D. 1985). See also, In reM.J.B., 364 N.W.2d 921, 923 (S.D. 1985). After reviewing the settled record herein, we are not left with a definite and firm conviction that a mistake has been made.
As the facts recited above establish, from October 1983 until April 1984, mother and her children led a transitory life, residing in shelters and various other accommodations in some seven states touching both coasts.[3] During this time, the children were enrolled in school for only several weeks and mother depended on divers people for food and shelter, whom mother met during her unplanned travels. In divorce custody proceedings, we have recognized *Page 57 
that frequent moves and transient lifestyles are not in the best interests of children. See Jasper v. Jasper, 351 N.W.2d 114, 117 (S.D. 1984); Langerman v. Langerman, 336 N.W.2d 669, 672 (S.D. 1983); and Haskell v. Haskell, 324 N.W.2d 423, 424-25 (S.D. 1982). Under these circumstances, the children lacked proper parental care through the actions or omissions of mother, SDCL 26-8-6(2), and the circuit court was not clearly erroneous in so concluding.
 II.
THE CIRCUIT COURT BALANCED MOTHER'S RIGHT TO RAISE HER CHILDREN WITH THE BEST INTERESTS OF N.H. AND THE PUBLIC.
In the dispositional phase of dependency and neglect proceedings, the circuit court must balance the fundamental right of a parent to raise his or her children with the best interests of the child and the public. In re S.H., 337 N.W.2d 179, 181 (S.D. 1983); In re P.M., 299 N.W.2d 803, 807 (S.D. 1980). Seealso, SDCL 26-8-22.11; and In re A.L.P., 368 N.W.2d 617, 621 (S.D. 1985). On appeal, mother makes the bald assertion that the circuit court failed to make such a balance.
The findings of fact and conclusions of law entered after the dispositional hearing clearly reflect that the circuit court balanced mother's right to raise N.H. with the best interests of the child and the public. Mother's assertion to the contrary is completely without merit, as reflected by the record herein.
 III.
THE CIRCUIT COURT DID NOT ERR IN AWARDING FATHER CUSTODY OF N.H.
After adjudging mother's children to be dependent and neglected, the circuit court held a dispositional hearing as mandated by SDCL 26-8-22.10. Thereafter, the circuit court entered findings of fact and conclusions of law, and by a Decree of Disposition, the circuit court granted father custody of N.H.
On appeal, mother contends the circuit court erred in granting father custody of N.H. and she asserts two rationales therefor.
First, mother contends the circuit court's dispositional findings are not supported by clear and convincing evidence. Interpreting such a contention to mean that the circuit court's dispositional findings are clearly erroneous, In re A.M.L., 371 N.W.2d at 359; see also, H.L., 386 N.W.2d at 499; we disagree. After weighing the evidence and balancing the rights and interests of those concerned, the circuit court concluded the best interests of N.H. required that custody be granted to father. In dependency and neglect proceedings, the best interests of the child are paramount, In re M.W., 374 N.W.2d at 894; and the circuit court may order custodial change of a child. Id. at 895-96. See also, SDCL 26-8-35(1). Although contrary evidence concerning N.H.'s best interests was presented, the record reveals that father was better able to provide for, and was providing for, N.H.'s need for affection, attention, food, clothing, education, medical needs, and other necessities of life. N.H. was provided with a comfortable, nurturing, and stable home which was equipped for the child's needs and which provided a supportive environment. N.H. adjusted extremely well to father's custody, was happy, and had a strong bond with his father. Based on a review of this record, we are not left with a definite and firm conviction that a mistake has been made.
Mother next contends the circuit court lacked compelling reasons for separating the sibling group. Citing two Iowa cases,In re L.B.T., 318 N.W.2d 200, 202 (Iowa 1982), and Doan Thi HoangAnh v. Nelson, 245 N.W.2d 511, 517 (Iowa 1976), mother asserts that brothers and sisters should not be separated and thereby lose the benefit of constant association without a showing of good and compelling reasons. In its dispositional considerations, however, the circuit court specifically acknowledged the above principle, but concluded the best *Page 58 
interests of N.H., as an individual, required that custody be granted to father, because the potential for fulfillment of N.H.'s temporal, mental, and moral welfare was greater if custody was granted to father. As the immediately preceding recitation of the record indicates, father was better able to provide for and meet N.H.'s present and future needs, and father was providing for and meeting those needs. Placement with father was an option or alternative which was not available to the other children, and the California social authorities stated that N.H.'s best interests required placement with father. Under these facts and circumstances, we agree with the circuit court's conclusion and disposition.
 IV. THE CIRCUIT COURT DID NOT ERR BY ADMITTING INTO EVIDENCE, AT THE DISPOSITIONAL PHASE, THE CALIFORNIA HOME STUDY REPORTS.
In the dispositional phase of the proceedings herein, the circuit court received into evidence California home study reports of father's Modesto, California home. Mother objected to the admission thereof because she was unable to examine the authors, and because the reports were not trustworthy. On appeal, mother contends the admission of these reports was erroneous, but we disagree.
First, the rule of evidence embodied in SDCL 19-16-10, which mother cursorily asserts was violated, does not apply in dispositional hearings in juvenile court. SDCL 19-9-14(7); In reC.J.H., 371 N.W.2d 345, 350 (S.D. 1985). Second, SDCL 26-8-30 allows the circuit court latitude in dispositional hearings so that it may be best informed as to the welfare and condition of the children. In re M.W., 374 N.W.2d at 895. Under SDCL 26-8-22.11, after entering an adjudication order, the circuit court is to hear evidence on the proper disposition best serving the interests of the child and public, and this evidence shall include the social study and other reports. Thus, the circuit court herein was simply instituting a statutory prerogative. Third, SDCL 26-8-32.5, which permits cross-examination of the authors of social studies and other reports, only concerns such studies and reports received in the adjudicatory hearing.
The Order and Decrees appealed from are affirmed.
MORGAN, WUEST and SABERS, JJ., concur.
FOSHEIM, C.J., concurs specially.
[1] C.W.H. was validly served by publication but made no appearance in any of the proceedings herein and was adjudged in default.
[2] This works out roughly to residing in a new city every two weeks and residing in a new state every month.
[3] The record also reveals that during the proceedings below, mother desired and sought to move to Hawaii and California. Additionally, at oral arguments, mother's counsel informed us that mother has again moved. This time, back to California.