Linda M. MAYER, Plaintiff
and Appellant,

v.

Frederick B. MAYER, Defendant
and Appellee.

No. 15236.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1986.

Decided Dec. 10, 1986.

Douglas G. Fosheim of Wehde, Fosheim & Haberstick, Huron, for plaintiff and appellant.

Patrick W. Kiner, Mitchell, for defendant and appellee.

SABERS, Justice (on reassignment).

Linda M. Mayer (Linda), appeals the trial court's order modifying the original Decree of Divorce to vest custody of the parties minor child in Frederick B. Mayer (Frederick). We reverse.

### Facts

Linda and Frederick Mayer were divorced on January 18, 1982. Their only child, Jennifer Mayer (Jennifer), was born on June 11, 1976. Jennifer had lived her entire life with her half sister Stacie Marie Smith (Stacie). Stacie is Linda's child from a previous marriage. At the time of this action, Jennifer was nine and Stacie was eleven years of age. Although half sisters, the relationship was that of full sisters.

Custody was not a contested issue in the divorce proceedings, and Linda was awarded custody of Jennifer. Shortly thereafter, Linda and her two daughters returned to Topeka, Kansas, where the entire family had lived several years prior to the divorce. At this time, Frederick remained in Mitchell, South Dakota, where he resided in the same trailer court as his mother, Mrs. Bernice Bollack (Mrs. Bollack).

Linda's primary job was with Barcliff Care Center, a nursing home. In February of 1985, Linda was dismissed from this job because she failed to report one cold winter day when her car would not start. Although she held another job, it was only part-time employment. The dismissal from her full-time job, coupled with Frederick's failure to pay court ordered child support, caused Linda to suffer a financial crisis. Unable to pay rent, she was required to vacate her leased home.

To temporarily provide for Stacie and Jennifer, Linda arranged transportation for herself and the children to Mitchell, South Dakota, in late February, 1985. Linda hoped to temporarily shelter the girls with Frederick's mother. A temporary custody agreement was signed by Linda and Mrs. Bollack on March 7, 1985. This agreement provides in part:

> It is agreed between Linda M. Mayer and Bernie Bollack that Bernie Bollack may have temporary custody of Stacie Smith and Jennifer Mayer. It is further agreed that during the time Bernie Bollack has temporary custody of such children that Linda M. Mayer waives her right to child support for such children from Bernie Bollack's son Frederick B. Mayer.
>
> It is further agreed that the temporary custody period shall end upon notice by Linda M. Mayer to Bernie Bollack, and at that time Bernie Bollack agrees to return said children to Linda M. Mayer and at that time child support waiver shall cease and Frederick B. Mayer shall resume paying child support ordered by this Court.

This agreement was made terminable at Linda's will to allow her to recover the children as soon as she was financially stable again.

Linda stayed in Mitchell with a girlfriend for one week to help settle the children. After enrolling them in school, Linda left for Topeka to secure new employment, settle her debts with her former landlord, find a new apartment and return to South Dakota for her daughters.

Within three months and before the girls could rejoin her, Linda was confronted with a change of custody proceeding initiated by Frederick. In this proceeding, which was filed in May and heard in July of 1985, Frederick requested and received custody of Jennifer. Frederick had not adopted, nor did he request, custody of Stacie who returned home with her mother.

In his affidavit supporting the Order to Show Cause and in open court, Frederick only asked for *legal* custody of Jennifer. In both instances, he requested that *physical* custody be given to his mother, who was not a party to the action. Mrs. Bollack lives with her second husband who is of no

blood relationship to Jennifer. In its Memorandum Opinion dated August 8, 1985, the trial court stated: "The request ... for physical custody with Bernice Bollack[1] is denied. [T]his Court has no objection to Bernice Bollack continuing her assistance with raising this child, but this Court is simply not interested in issuing some hybrid custody order ..."

The trial court entered Findings of Fact and Conclusions of Law, and a Decree modifying custody on September 3, 1985. The court specifically found that Jennifer was too young to intelligently perform a custody preference. In awarding legal and physical custody of Jennifer to her father, the trial court concluded that Frederick sufficiently demonstrated that the child's best interests required that he be granted custody.

### Mother's Claims

Linda advances two arguments for reversal: First, that the trial court erred in awarding custody to Frederick, knowing that Mrs. Bollack would serve as Jennifer's true custodian, and without making the appropriate evidentiary findings applicable to a parent/grandparent custody proceeding. Secondly, that the trial court abused its discretion in holding that the child's best interests were served by the custody change, especially when this change necessitated the splitting up of Jennifer and her half sister Stacie.

### Standard of Review

█ In *Kolb v. Kolb*, 324 N.W.2d 279, 283 (S.D.1982), we held that SDCL 25–4–45[2] vests broad discretion in the trial court to determine which parent in a divorce action should be given custody of their children, and that decision will be reversed only for a clear abuse of discretion. In conformance with this statute, the general rule is that a parent seeking modification of a divorce decree as it pertains to child custody has the burden of proving both (1) a substantial change of circumstances, and (2) the welfare and best interests of the child require modification. *Flint v. Flint*, 334 N.W.2d 680, 681 (S.D.1983) *citing Masek v. Masek*, 90 S.D. 1, 237 N.W.2d 432 (1976); *Warder v. Warder*, 87 S.D. 133, 203 N.W.2d 531 (1973); *Hershey v. Hershey*, 85 S.D. 85, 177 N.W.2d 267 (1970). However, an exception to this rule has developed when custody was not a contested issue in the first instance. Thus, in *Kolb*, we held that when the original decree of divorce was based upon an agreement between the parties, the party seeking modification is not required to show a substantial change of circumstances. 324 N.W.2d at 283; *Flint*, 334 N.W.2d 681. *See also: Hansen v. Hansen*, 327 N.W.2d 47 (S.D.1982); *Haskell v. Haskell*, 324 N.W.2d 423 (S.D.1982).

█ Here, the original decree awarded custody to Linda based on an agreement of the parties. As such, the "substantial change of circumstances" element was lifted from Frederick's burden of proof. Therefore, at the modification hearing, Frederick had the burden of showing that the best interests and welfare of Jennifer required a change of custody. *Flint, supra*. The trial court held that Frederick sustained this burden. We hold that he did not.

1. THE TRIAL COURT ERRED IN CHANGING CUSTODY, KNOWING THAT PHYSICAL CUSTODY WOULD BE IN THE PATERNAL GRANDMOTHER, ALL WITHOUT SHOWING THAT THE MOTHER WAS UNFIT OR DEMONSTRATING EXTRAORDINARY CIRCUMSTANCES AFFECTING THE WELFARE OF THE CHILD

█ Mrs. Bollack testified that she desired to have custody of Jennifer. Frederick testified that he wished his mother to have custody because his job as a truck

---

1. The spelling of the name "Bollack" is corrected throughout.

2. SDCL 25–4–45 provides in full:

In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.

driver did not give him time to raise a child. In its Memorandum Opinion, the trial court wrote:

> It appears ... that neither party has registered any objection to or problems with Mrs. Bollack raising the child. Plaintiff now desires return of the child but obviously felt content in entering into an agreement for temporary custody with Mrs. Bollack ... The defendant, by virtue of his employment needs his mother to assist the raising of this child on a constant basis. The grandmother ... is a very kind and loving person who obviously finds herself in the middle of a custody issue and is solely concerned for the child and her love and affection for the child has been most adequately demonstrated.

It is obvious from this record that the trial court also wanted Mrs. Bollack to have custody, but realized that granting custody to her was impossible under South Dakota law. SDCL 30–27–23 provides in full:

> Persons entitled to preference in custody of minors. Of two persons equally entitled to the custody in other respects, preference is to be given as follows:
> (1) To a parent;
> (2) To one who was indicated by the wishes of a deceased parent;
> (3) To one who already stands in the position of a trustee of a fund to be applied to the child's support;
> (4) To a relative.

*Langerman v. Langerman*, 336 N.W.2d 669 (S.D.1983), interprets this statute and holds:

> Before a parent's rights to custody over his or her own children will be disturbed in favor of a nonparent, a clear showing against the parent of gross misconduct or unfitness, or of other extraordinary circumstances affecting the welfare of the child is required, and an award cannot be made to grandparents simply because they may be better custodians. (Citing six other cases.)

*Id.* at 670.

To circumvent this rule, the trial court gave custody to Frederick. In doing so, the court implied that Frederick was not the proper parent. We need look no further than the trial court's opinion to recognize that the grant to Frederick was, in practical effect, an award of custody to Mrs. Bollack. Finding of Fact XXII states: "[I]t appears that both Plaintiff and Defendant are agreeable with the home environment as provided to the minor child by Mrs. Bollack." The evidence before us suggests that the trial court knew that Mrs. Bollack would have physical custody of Jennifer and that Frederick was not the proper parent. Nevertheless, it ignored the *Langerman* holding which requires a clear showing of gross misconduct or unfitness, or other extraordinary circumstances affecting the child's welfare, before a parent's right to custody will be disturbed in favor of a nonparent. *Id.*

### i. *Unfitness*

Linda's only financial crisis on record was that which forced her to temporarily surrender custody to Mrs. Bollack. This temporary financial crisis was caused in part by Frederick's failure to pay court ordered child support. The evidence shows that Linda has often worked two jobs at a time, while Frederick's employment history is sporadic at best. The trial court found that Linda is presently employed at the Topeka Convalescence Center, Inc., in Topeka, Kansas, where she cares for the elderly. She lives in an apartment which is located approximately five blocks from her work and three blocks from a school.

The trial court further found that Linda had limited contact with Jennifer while they were initially separated, and that during and after their "infrequent contacts the minor child became upset, but would settle down in a short while." This comprises the sum total of "evidence" of Linda's "unfitness." There is no evidence of misconduct or unfitness in this record to warrant Jennifer's removal from her mother's care and custody.

Frederick testified to a dismal work record characterized by extended periods of unemployment and periods of only partial

employment. The record shows that he was unemployed at the time of trial. Frederick stated that his most recent employment was only part-time, that he was fired, and that his employability has suffered due to an accident which increased his risk rating with insurers. In addition, Frederick had recently defaulted on civil debts existing from the time of the divorce, which arose from a criminal infraction on his part. At Finding of Fact X., the trial court found that Frederick has worked as a truck driver, that he was presently employed on a part-time basis hauling hay, and that he lives in a rented trailer in Mitchell, South Dakota. Even when Frederick is working at his trucking job he is away from home and cannot devote attention to parental duties.

### ii. *Extraordinary Circumstances*

The trial court found that upon entering school in Mitchell, Jennifer encountered difficulty, especially due to a lack of reading skills which threatened her ability to pass the third grade. Mrs. Bollack worked daily with the child and Jennifer made considerable progress in her reading and other school work.

The trial court further found that Frederick and Jennifer participated in the following activities:

1) Swimming lessons
2) Park and Recreation programs
3) Bible School
4) Book Reading Club
5) Family Picnics
6) Fishing
7) Beer-can hunting
8) Monopoly
9) Motorcycle riding

In reading the entire record, it is clear that the real participants in these activities were first, Stacie and Jennifer; secondly, Stacie, Jennifer, and to a lesser degree, Mrs. Bollack; and thirdly, Stacie, Jennifer, and to a much lesser degree, Frederick. Furthermore, almost all of the activities

listed occurred after Frederick's decision to file the Order to Show Cause for change of custody. A substantial part of this organized activity was done during the same period of time spent in preparation for the anticipated custody fight. It appears that the trial court was overly impressed with this five month rush of accelerated activity.

The fact that Mrs. Bollack was willing and able to spend more time with Jennifer than perhaps *either* of her parents could, is simply not a sufficient basis to remove the child from Linda's charge. We recognize that any custodial parent who works for a living must make suitable arrangements for child care during the time that he or she is at work.

Frederick had the burden of showing that Jennifer's best interests necessitated the modification. Allegations of parental inadequacy exist on both sides, although neither parent appears unfit. "The court's primary consideration when awarding custody is the best interest of children and not the shortcomings of the custodial parent." *Haak v. Haak*, 323 N.W.2d 128, 130 (S.D.1982) (citations omitted). There is no inference favoring one parent over the other in deciding which one should have custody. *In Re Marriage of Welbes*, 327 N.W.2d 756, 758 (Iowa 1982). The predominant concern is the child's best interest and each case turns on its own facts in determining which parent can administer more effectively to the long range interests of the child. *Id.* We therefore find that the trial court abused its discretion in modifying the custody arrangement.

### 2. THE TRIAL COURT ABUSED ITS DISCRETION IN SEPARATING JENNIFER FROM HER HALF SISTER, STACIE, WITHOUT COMPELLING REASONS

It is universally recognized that in the absence of compelling reasons to the contrary, the best interest of siblings require that they be raised together whenever possible.[3] *Albright v. Com. ex rel. Fet-*

---

**3.** The following cases support the strong public policy toward preservation of the sibling rela-

tionship. *See: In Re Marriage of Gonzales*, 373 N.W.2d 152, 155 (Iowa 1985) (Siblings benefit

ters, 491 Pa. 320, 421 A.2d 157, 160 (1980). Jennifer was born just two years after Stacie, and she lived her entire life with Stacie. Until separated by the court, the relationship of these half sisters was that of full sisters. Stacie is Jennifer's only big sister. They share the bonds of a common childhood. It is crucial to Jennifer's best interests that this sibling relationship remain intact, so that the girls may be reared as sisters. "[W]hile brothers and sisters may not have a legal right to remain together, to share each others lives, and to grow up together, certainly they have a natural right to do so." *Arons v. Arons*, 94 So.2d 849, 853 (Fla.1957). Despite the absence of the exceptional circumstances required for split custody, the trial court chose to destroy Jennifer's opportunity to experience this unique bond.

In *Ketron v. Aguirre*, 15 Ark.App. 325, 692 S.W.2d 261 (1985), the father sought a change of custody four years after custody of the minor child, Chad, was awarded to the mother pursuant to divorce. At the time of the dissolution in 1979, Chad was eight years old. *Id.* at 262. The court noted that the child had a good relationship with both his parents, and was doing well physically, emotionally, and in his school work. *Id.* at 263. In refusing to modify the custody award, the court adopted the trial court's reasoning which found one of the most compelling reasons for continuing custody in the mother was its reluctance to separate Chad from his younger half brother, Toby. *Id.* at 264. The court stated:

On this point, the trial court's reasoning is consistent with settled case law reflecting that, unless exceptional circumstances are involved, young children should not be separated from each other by dividing custody.

*Id.* See also: *In Re Marriage of Orte*, 389 N.W.2d 373 (Iowa 1986).

In *Arons, supra,* custody of the couple's three children was split upon divorce. The trial court awarded custody of the two younger children to the mother, and custody of the oldest child, Jackie, to the father. At the time of the proceedings, Jackie was eight years of age. The decree also provided that when the father was required to be out of state for extended periods of time on business, Jackie was permitted to remain at the home of his paternal grandmother. The mother appealed this decision. 94 So.2d at 850–851.

In reversing and awarding her custody, the court stated, "We are of the view that the children in a family should not be separated from each other and distributed about in different homes, except for the most compelling cause." *Id.* at 853. Although the trial court found that the grandmother was a fit and proper person to have custody of the child, and in fact found that Jackie would be better off in his grandmother's care, the appellate court was not so persuaded. *Id.* at 851–852. The court wrote:

While there is little doubt that if [the father] has the custody of Jackie, the child will, through [the paternal grand-

---

from knowing one another, thus, courts do not "[s]eparate siblings unless there are compelling reasons to the contrary.") *McCoy v. McCoy*, 400 So.2d 859 (Fla. 4th DCA 1981) (relying on *Arons*, discussed *infra* ); *Boroff v. Boroff*, 197 Neb. 641, 250 N.W.2d 613, 617–618 (1977) (Reversible error to separate children where both parents were fit.); *Tiffee v. Tiffee*, 254 La. 381, 223 So.2d 840, 842 (1969) ("When feasible, a court should shape its orders to maintain family solidarity."); *Rhodes v. Rhodes*, 370 P.2d 902, 903 (Alaska 1962) (Children should be kept "together so that they may enjoy the normal condition of childhood of growing up together ..."); *Songster v. Songster*, 150 Colo. 466, 374 P.2d 197, 198 (1962) ("Division of the children is not generally proper unless the paramount interest of the children

require it."); *Autry v. Autry*, 350 S.W.2d 233, 236 (Tex.1961) ("Where it is possible for all the children of a marriage to be kept together and reared as a family of brothers and sisters, it is not in the best interest of the children that custody of one or more be awarded to one parent, and the balance to the other."); *Tuter v. Tuter*, 120 S.W.2d 203 (Mo.App.1938) ("As the courts have wisely observed, when the mother and father are separated beyond the possibility of reconciliation, separation of the children is an added tragedy."); *Fisher v. Fisher*, 207 S.W. 261 (Mo.App.1918) ("For the welfare of the children, they should be allowed to grow up together in one household, sharing joys and sorrows and benefitting from those ties of affection which they were intended by nature to enjoy.").

mother], receive more of the material things of life than if he is in the custody of his mother, this factor does not of itself mean that the child's total welfare will be best promoted thereby. Nor does it, of itself, justify the taking of a child from a parent who is a fit person to care for it.

*Id.* at 852.

After stating the general rule that siblings should remain together unless compelling reasons dictate otherwise, the *Albright* court further stated that this principle is in no way diluted by the fact that one child is a half sibling. 421 A.2d at 161. Here, there are no compelling reasons [4] nor exceptional circumstances present to overcome Jennifer's interest in remaining with Stacie. Jennifer's interest in remaining with Frederick does not constitute a compelling reason, in and of itself, where the record reveals virtually no superior parenting abilities on his part. No doubt the trial court counted on Mrs. Bollack to furnish continuous assistance in raising Jennifer. Moreover, the record shows that Mrs. Bollack is deeply concerned about Jennifer's welfare and has demonstrated a real interest in improving and helping her. However, these are not the compelling reasons that the cases require.

The evidence shows that the trial court gave no consideration to the profound effects of ending Jennifer's valuable relationship with her sister. Nor did it provide any persuasive rationale for splitting them up. Justice requires that society exercise its moral duty to insure that children in a family enjoy the right to remain together, to share each others lives, and to grow up

together, until such time as necessity and the welfare of the children, itself, requires their separation. *Arons,* 94 So.2d at 853. Such necessity does not exist here. For the trial court to conclude that it was in Jennifer's best interest to award custody to Frederick without adequate findings regarding such a crucial consequence of the custody arrangement, "requires reversal." *Jasper v. Jasper,* 351 N.W.2d 114, 117 (S.D. 1984).

## 3. THE TRIAL COURT IGNORED THE ACTIONS OF MRS. BOLLACK WHICH AMOUNTED TO FRAUD OR OUTRAGEOUS BREACH OF CONTRACT

■ As indicated above, a temporary custody agreement was executed between Linda and Mrs. Bollack on March 7, 1985, in which the temporary custody of both Jennifer and Stacie was given to Mrs. Bollack. The agreement was made terminable at the will of Linda to allow her to return for the children as soon as she was financially stable again. The custody lawsuit was filed within three months of this agreement and the custody hearing was held two months later. Despite the signed agreement which provided that Mrs. Bollack would return the girls to their mother upon Linda's request, the evidence shows that Mrs. Bollack did everything in her power to get custody first for herself and if that wasn't possible, then for her son, Frederick. If Mrs. Bollack intended to do this at the time she signed the agreement, it was fraud. If she made the decision to seek custody after she signed the agreement, although not fraud, her actions amounted

---

**4.** The following cases have held in favor of split custody where compelling reasons exist, and when it is in the child's best interest to be separated from its sibling(s): *Richey v. Richey,* 216 Neb. 565, 344 N.W.2d 642, 644 (1984) (physical harm to child would continue if not taken from the parent having custody of child's brother); *In Re Marriage of Jones,* 309 N.W.2d 457, 461–462 (Iowa 1981) (older brother bad influence on younger brother); *Braeman v. Braeman,* 192 Neb. 510, 222 N.W.2d 811, 814 (1974) ("[C]onsiderations of public policy do not, in all cases, prevent the splitting of custody of the children between the parents upon dissolu-

tion."); *Donnelly v. Donnelly,* 300 Minn. 503, 217 N.W.2d 738, 739 (1974) (proper to split custody and give twelve year old son to father where this father/son relationship was particularly strong and because son needed father at this age); *Nicholson v. Nicholson,* 126 N.W.2d 904, 909 (N.D.1964) (awarding custody of ten year old girl to husband and custody of fourteen year old girl to wife was not an abuse of discretion); *Bryce v. Bryce,* 229 Md. 16, 181 A.2d 455, 460–461 (1962) (evidence indicated that some detrimental effect would result from four year old child living with mother who suffered from mental disease).

to an outrageous breach of contract. In spite of this, the trial court completely ignored Mrs. Bollack's conduct.

Accordingly, we reverse and return Jennifer to her mother, Linda, and her half sister, Stacie, in accordance with the law and the signed written agreement.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON, J., specially concurs.

HURD, Circuit Judge, dissents.

HURD, Circuit Judge, sitting for FOSHEIM, Justice, disqualified.

HENDERSON, Justice (specially concurring).

This author does not subscribe to the views expressed in the majority opinion in *Kolb v. Kolb*, 324 N.W.2d 279, as cited in the majority opinion under Standard of Review. Rather, this author still hew to the rule enunciated in *Sneesby v. Davis*, 308 N.W.2d 565 (S.D.1981) and *Masek v. Masek*, 90 S.D. 1, 237 N.W.2d 432 (1976), that the applicant seeking custody modification must prove (1) a substantial and material change in circumstances since the decree of divorce was entered, and (2) the welfare and best interests of the child require the modification being sought.

In reviewing the findings of fact and conclusions of law, there can be little doubt that there was a substantial change of circumstances upon which a change of custody could be based. These were all facts *after* the divorce decree was entered. The mother had agreed to yield custody of these children as she could not take care of them. She signed an agreement to that effect.

However, there were further circumstances to reflect that she thereafter stabilized her employment and living situation and the father, who apparently had a good job as a semi-truck driver, had lost his job and at the time of the modification hearing had no job at all. It appears that a loving grandmother was the chief support and stabilizing influence in the lives of these two girls while the mother was trying to readjust her life and while the father was trying to stabilize his employment. So—to repeat—there was a fulfillment of the first requirement in *Sneesby*, namely, the facts supported, by a preponderance of evidence, that there had been a substantial and material change of circumstances.

As these facts all developed *after* the divorce decree was entered, the rationale of *Kolb* (to look behind the decree of divorce for facts) is inapposite. It is true that custody was not a contested issue in the divorce proceedings. But everything is factually decided in this case, post divorce proceedings. In this case, this Court is not going behind the divorce decree at all, so how the rationale of *Kolb* can come into play is enigmatic.

This takes us to the second requirement, namely, that there be a consideration for the welfare and the best interests of the children. Moreover, that same be established, for a modification, by a preponderance of the evidence. Under all of the circumstances and facts of this case, I am convinced that no such preponderance of the evidence showing has been established. First of all, the father was unemployed and without means to support the child at the time of the modification. Second, in the short time that he had a close relationship with these two girls, it was via a temporary custody agreement executed by his ex-wife and his mother. It was his mother who was caring for the children by furnishing the necessities of life.

It appears from the transcript that his ex-wife secured new employment at Topeka, Kansas, and did have a home for the children to shelter them. This mother did sign a temporary custody agreement but this was terminable at her will. She therefore had the right to terminate it and regain custody of the two girls.

As the majority opinion suggests, it was during this temporary custody arrangement that the father sought custody. The mother was confronted with a change of custody proceeding, now at issue here, in

contravention of the temporary custody agreement and before she had an opportunity to regain the physical custody of the children after she stabilized her situation in Topeka, Kansas. I specially concur because I find disfavor with the *Kolb* precedent and its application to this factual scenario.

I also agree with the reversal in this case for the reason that there was an omission of finding of fact and conclusion of law which pertained to a parent versus a non-parent custody award. The trial court recognized the law, for it was expressed in the Memorandum Opinion; however, there were no findings of fact/conclusions of law which pertained to the gross misconduct or unfitness of the mother. *See Matter of G.H.*, 390 N.W.2d 54 (S.D.1986). And with the father having neither home nor job, it was obviously an award of custody to the grandmother in spirit.

I am firmly convinced that the trial court erred in splitting the custody of these two girls. These girls should not be deprived of the daily association and love of one another. There are no compelling circumstances reflected in this record to split the association of these two sisters—it would be an emotional and traumatic blow to each child. After all, they have always been together. The Court has, in the past, consistently encouraged a stable home environment and the preservation of the family unit. *Jasper v. Jasper*, 351 N.W.2d 114 (S.D.1984); *Andera v. Andera*, 277 N.W.2d 725 (S.D.1979).

When father and mother are divorced, it is a tremendous psychological blow to the children; one parent is gone from the home. When, as in split custody of the siblings, the children are separated from one another, it is an additional blow so psychologically traumatic, that great instability of the children is fostered. Simply put, when children lose one of their parents at home, they rely upon one another, and need one another, ever the more. *See Ebert v. Ebert*, 38 N.Y.2d 700, 704, 382 N.Y.S.2d 472, 474, 346 N.E.2d 240, 243

(1976). *Accord: McKay v. McKay*, 253 Iowa 1047, 115 N.W.2d 151 (1962).

Severe hostility between siblings, inability of either parent to care for all of the children, and damaging competition between siblings (manifesting ill will and malignity) can rise to such a level that split custody is compelling. *Joint Custody and Shared Parenting* 6 (J. Folberg, ed. 1984). Split custody of siblings, as a judicial remedy and judgment, should be uncommon and rare in the law. Compelling reasons must be advanced to separate brothers and sisters. *Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511 (Iowa 1976). These sisters obviously have a strong bond between them. It would be wrong to sever this constant and loving bond which was developed over a period of many years. *Cf. Matter of G.H.*, 390 N.W.2d 54 (where this Court affirmed the trial court's finding of compelling reasons in a dependency and neglect case for separating siblings).

Accordingly, for all of the above reasons, I specially join the majority in reversing the trial court.

HURD, Circuit Judge (dissenting).

I respectfully dissent.

The majority holds the trial court erred in changing custody to Frederick, knowing that physical custody would be in the paternal grandmother, all without finding that Linda was unfit.

The trial court did not grant Frederick's request that his mother be granted physical custody of Jennifer. Rather, the trial court vested custody in Frederick under circumstances where, with Frederick's approval, his mother will be largely responsible for the day-to-day care of Jennifer. Under the trial court's decision the paternal grandmother has no more custody than a governess entrusted with the care and supervision of a child.

"Custody," as it relates to children, embraces the sum of parental rights with respect to the rearing of a child. These parental rights include the right to the child's earnings and service, SDCL §§ 25–

5–7 and 25–5–11; the right to determine the child's residence, SDCL 25–5–13; the right to inherit from the child's estate, SDCL §§ 29–1–6 and 29–1–16; and the right to make decisions regarding the child's care, protection, discipline, health, education and religion.

The trial court granted no custody or parental rights to Frederick's mother and thus did not violate the rule set forth by this court in *Blow v. Lottman*, 75 S.D. 127, 59 N.W.2d 825 (1953), that:

> By nature and under the common law and by virtue of statutory provisions, SDC 14.0303 [SDCL 25–5–7] and 14.0506 [SDCL 30–27–23], a parent has a preferred legal right to custody of his or her own children.

*See also: Langerman v. Langerman,* 321 N.W.2d 532 (S.D.1982).

Based upon a cold record, the majority holds the trial court, which had the considerable benefit of personal observation and evaluation of the witnesses, clearly abused its discretion in concluding Frederick sustained his burden of showing the best interest of Jennifer required modification of custody.

I recognize the importance of sibling relationships. Absent good reason, siblings should not be separated. *See: People in the Interest of G.H.,* 390 N.W.2d 54 (S.D. 1986). Here, the trial court had no jurisdiction to award custody of Jennifer's half-sister to Frederick. Nevertheless, the trial court concluded the best interests of Jennifer required custody to be vested in Frederick. This conclusion is supported by evidence of the quality of time spent by Frederick with Jennifer, the significant improvement in her school work while in Mitchell, and the availability of Frederick's mother to provide day-to-day love and care for the child. Thus, this court should not substitute its judgment for the judgment of the trial court as to the best interest of Jennifer.

I would affirm.