Upon the Petition of Benjamin
**PURSCELL, Petitioner–
Appellant,**

**And Concerning Beverly Jean McClure,
Respondent–Appellee.**

No. 95–652.

Court of Appeals of Iowa.

Dec. 22, 1995.

Douglas R. Smalley of Riemenschneider, Rydell & Smalley, Des Moines, for appellant.

William J. Schadle, Des Moines, for appellee.

Heard by SACKETT, P.J., and CADY and HUITINK, JJ.

SACKETT, Presiding Judge.

The question in this appeal is which of the two young, unmarried parents will serve as a better custodian of Ben, born on February 15, 1993. When Ben was born, his father, petitioner-appellant Benjamin Purscell, was seventeen and his mother, respondent-appellee Beverly Jean McClure, was fifteen. Both Beverly and Benjamin lived with their parents. Beverly took Ben home with her and he has lived with her since. During this time, Beverly has moved ten times in twenty-three months and has lived with three different men and her mother and brother. Beverly claims to have a stable relationship with her current live-in boyfriend. At the time of trial, they had cohabited for about nine months. Beverly is not employed outside the home and relies on aid to dependent families to pay one-half the rent on the apartment she and her boyfriend occupy. There is evi-

dence some of the places Beverly has lived with Ben have not been adequate.

Benjamin continues to live in his parents' home and recognizes, if he receives custody, he will need to rely on his parents for assistance in the care of Ben. Benjamin's parents have a long-term, stable marriage and his teenage sister, who also lives in the house, is an honor student. The home where they live is clean and well cared for.

The trial court found Benjamin's mother, Mrs. Purscell, would do a fine job raising Ben, but because she is not the parent, found the custody case should rise or fall on the merits of the parents. The trial court then went on to find both Beverly and Benjamin immature and with problems and questioned the ability of either parent to take care of Ben over the long term.

The trial court determined Benjamin was in a superior position to meet Ben's economic needs and would take care of Ben as long as he lived with his mother, but had concern if he did not live in his parents' home. The court also found the best interest of Ben would be served if one of his parents were the primary caretaker and found this would not occur if Ben resides with Benjamin's family.

The trial court found the couple should share joint legal custody with Beverly having primary physical care. The trial court found Beverly had had primary care of Ben since his birth and has been importing her parenting skills on a continuing basis since the placement. Visitation was fixed and an order was entered requiring Benjamin to pay child support.

■ Benjamin appeals contending he is the better custodian. He argues, where there is evidence neither parent may be adequate, the trial court should not have rejected the assistance Mrs. Purscell gave her son.

The Purscell family wants to help Benjamin care for Ben.

■ The controlling consideration in determining custody is the interest of the child. Iowa R.App.P. 14(f)(15). In deciding this question, we review the record de novo. Iowa R.App.P. 4. We give weight to the findings of the trial court, but are not bound by them. See In re Marriage of Novak, 220 N.W.2d 592, 597 (Iowa 1974). There is no inference favoring one party as opposed to the other in deciding which one should have custody. See In re Marriage of Bowen, 219 N.W.2d 683, 688 (Iowa 1974). We determine each case on its own facts to decide which parent can administer more effectively to the long-range interest of the child. In re Marriage of Winter, 223 N.W.2d 165, 166 (Iowa 1974). The critical issue is determining which parent will do better in raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in an original custody proceeding. See In re Marriage of Ullerich, 367 N.W.2d 297, 299 (Iowa App.1985). The criteria governing custody decisions is the same regardless of whether the parties are dissolving their marriage or are unwed. Lambert v. Everist, 418 N.W.2d 40, 42 (Iowa 1988).

The issue of grandparents' assistance in child care was considered by the Iowa court in In re Marriage of Welbes, 327 N.W.2d 756 (Iowa 1982). In Welbes, the court said, "[i]n the present case the trial court found, and we agree, that both parties love the child and each is capable of providing her with a good home and proper environment." Id. at 758. The court went on to find:

[o]n the other hand, when Kent [the father] had Holly [the child], he assumed the responsibility of caring for her with the assistance of his parents. His parents took over much of the physical care and day-to-day control. They are both able and willing to continue this relationship. Holly has rarely been left with babysitters and has had the care and attention of both her father and her grandparents. We are convinced this arrangement offers the best hope for Holly's future. The home she had and the care she received while there are superior to the conditions which Kelly [the mother] is presently able to provide. This is not a criticism of Kelly, but merely a conclusion as to where the child's best interests lie.

Welbes, 327 N.W.2d at 758.

In Welbes, the court addressed the mother's argument the grandparents, rather than

the father, would have much of the child's care and the mother saw this as a reason to deny the father custody. The court said, "[w]e take the opposite view. No matter which parent has custody, Holly is fore-doomed to get much of her care and early training from others. Since this is true, we believe the grandparents are to be preferred over the ministrations of strangers." *Id.*

We note in *Welbes* there was a finding both parents were capable of taking care of the child. There is an opposite finding in this case. The trial court voiced concern neither parent will be able to handle care in the long term.

Beverly has not shown a stability in residence or relationships. Benjamin has shown some stability in life decisions. He has exhibited stability in employment. He has been ordered to pay child support and is fairly current in his obligation.

Beverly claims her current relationship is stable. Her current boyfriend, the other care giver in her current home, is also immature. There is no showing he has the ability to assist in meeting Ben's needs.

Beverly's behavior can be termed impulsive. History would suggest Beverly will not remain in her current relationship. Benjamin, in contrast, lives in a home where the other care givers are stable and caring.

We find it is in Ben's long-range best interests to place primary physical care with Benjamin. We modify the decree accordingly. Beverly's visitation shall be the same as was given to Benjamin in the trial court's decree. Beverly is currently unemployed but has the ability to contribute to her child's support. We fix her child support obligation at $100 per month.

Costs on appeal are taxed one-half to each party. We award no attorney fees.

**AFFIRMED AS MODIFIED.**