Charles L. **MITZEL**, Plaintiff
and Appellant,

v.

Patricia **BLACK CLOUD–WALBERG**,
Defendant and Appellee.

No. 18084.

Supreme Court of South Dakota.

Considered on Briefs May 26, 1993.

Decided Feb. 2, 1994.

Lonald L. Gellhaus of Williams and Gellhaus, Aberdeen, for plaintiff and appellant.

Peter Pagones, Aberdeen, for defendant and appellee.

HENDERSON, Justice.

Charles Mitzel (Father) appeals an order changing custody of Matthew Mitzel to Patricia Black Cloud–Walberg (Mother). Compelling reasons do not exist to separate two small boys. We reverse basing our decision on the facts and precedent of this Court: *Adam v. Adam*, 436 N.W.2d 266, 268 (S.D. 1989); *Mayer v. Mayer*, 397 N.W.2d 638 (S.D.1986).

## FACTS

Father and Mother met at a party in 1988. Father was previously married and divorced. One child (Larry) was the issue of that marriage. Father and Mother began a relationship which did not result in their marriage but did result in a son, Matthew (D.O.B. 11/3/89). Shortly after Matthew's birth,

Mother and Father split up permanently. Mother was chemically addicted to alcohol and severely neglected Matthew. Based upon the abuse of Matthew, and an unsafe environment, the Department of Social Services, aided by the Aberdeen Police Department, removed Matthew from Mother's home and placed him in Father's care. With approval from the circuit court, Mother and Father stipulated that Father should have physical custody of Matthew. Thus, Father had physical custody and cared for Matthew from September 1990 until the trial court entered the custody order, separating the siblings, which is the subject of this appeal.

■ Father married another woman in October 1991. Although this marriage failed approximately one year later, it did result in the birth of a son, Charles, Jr. Father had custody of Charles, Jr. from his birth up and through the trial of this action.[1] Specifically, the brothers play ball together and Matthew brings toys to Charles, Jr.; the boys attend the same day care facility; they play together and Matthew helps feed his little brother; other shared activities are trips to Storybook Land with the grandfather. It is obvious, from the record, that the two boys have a compatible relationship and share the bonds of a common childhood. We note that Father engages in wholesome activities with the boys such as fishing, camping, and traveling. Moreover, testimony from the day care provider establishes that the children are clean, neat, and well-fed. Importantly, this independent and neutral testimony established that there was a strong bond between Matthew and Charles, Jr. Under these facts, we cannot hold there were "compelling reasons" to separate these two boys. They are living in a loving home. The boys' relationship was described in testimony as "very—very lovely."

Mother married John Walberg on March 7, 1992. On May 26, 1992, Mother filed a motion in circuit court requesting an order granting her physical custody of Matthew. A full evidentiary hearing on the motion was held on August 3, 1992. The trial court concluded that both Mother and Father are capable parents. However, the trial court decided that it was in Matthew's best interests for Mother to be given physical custody. The trial court expressed the following reasons in support of its decision to change custody and separate Matthew from Father and Charles, Jr.:

Walberg and her husband can offer Matthew opportunities that Mitzel cannot. Either Walberg or her husband will be available for home day care by re-arranging their work schedules. When Mitzel works, Matthew is placed at outside day care.

When John Walberg graduates, he will have job opportunities based on his education [sic] which are not available to non-college graduates. John Walberg testified that he is fully prepared to assume financial responsibility for Matthew's needs. Mitzel, who is considered permanently disabled through no fault of his own, will continue to live on part-time car body work, social security disability and ADC. No evidence was offered as to any potential for advancement.

The Walbergs have a stable marriage with two excellent role models for Matthew to observe. They are also providing for Matthew's spiritual training. Mitzel, while being an excellent father, has been unable to sustain a long term relationship with a woman. This may be due in part to his preference for women who are in reality teenagers. Also, he gave no evidence as to any attempts at religious education.

■ It appears that the trial court's rationale for changing custody was largely one of economics, i.e., the new family unit (Walberg) would be in a better position to financially care for Matthew's needs. However, there is no evidence to suggest that Matthew's needs are not being cared for in his Father's custody. A preponderance of the proof establishes that Matthew is well cared for, happy, and is being reared in a close sibling relationship with Charles, Jr. By inference or leap of

1. Mother's brief discusses subsequent custody changes between Father and the mother of Charles, Jr. These changes occurred after the trial court made its decision in this case. Evidence of any changes in custody of Charles, Jr. is not properly in the record of this case and we have not considered those matters in reaching our decision.

logic, the economics of this competing family setting does not amount to "compelling reasons," as required by *Adam* or *Mayer*. Mother and her husband should not be considered better parents simply because of an ability to provide more money and more education. The trial court noted that Father had been a good parent. In point of fact, the trial court explicitly pointed out that Mitzel "is an excellent housekeeper ... has taken parenting classes to make himself a better father ... [and] places Matthew and Charles, Jr. with an excellent day care center."

█ The trial court did not specify its "compelling reasons" for separating Matthew from his half-sibling Charles, Jr. There are no specific findings of fact concerning "compelling reasons." Nor are there any conclusions of law to that effect. However, in its memorandum opinion, the trial court did describe this case as "unique" for two reasons.

First Matthew has already been split from one of his half-brothers, Larry, by Mitzel's divorce decree with his first wife.[2] This Court has no jurisdiction over that proceeding. Second, Matthew will become a brother to a half-sibling on his mother's side in late February of 1993. While the sibling is not born at this time, this Court is mindful that its ruling in this case is permanent unless modified at a later date.[3]

The trial court awarded physical custody to Mother with liberal visitation to Father. Under the state of the record, we reverse. "Unique" does not equate with "compelling."

█ It appears the trial court speculatively assumed Matthew to bond with a new half-sibling to be born in February, 1993. The present trial court used this rationale in its decision, considering the bonding of a future half-sibling and disregarding the pre-existing bond which existed between Matthew and a half-sibling he lived with. This was error.

█ A change in circumstances was not required to change custody inasmuch as the original custody arrangement was based on consent. *Kolb v. Kolb*, 324 N.W.2d 279, 283 (S.D.1982). Ordinarily, the custody decision is based on what is in the best interests for the child's temporal, mental and moral welfare. However, siblings and half-siblings should not be split unless "compelling reasons" justify such action. *Mayer*, 397 N.W.2d at 644; *Adam*, 436 N.W.2d at 268. We cannot find "an articulate rationale" for splitting the custody of these siblings. *See Madsen v. Madsen*, 456 N.W.2d 551, 554 (S.D.1990). Factually, it does not exist.

Reversed.

WUEST and AMUNDSON, JJ., concur.

MILLER, C.J., and SABERS, J., dissent.

SABERS, Justice (dissenting).

I would affirm. Compelling reasons exist to separate these half-siblings even if they were not expressed well by the trial court.

In the alternative, I would remand for detailed findings of fact and conclusions of law regarding the compelling reasons for separating the half-siblings.

MILLER, C.J., joins this dissent.

---

2. *This is partially true.* Larry, his older half-brother, although not raised in Father's home, has a warm relationship with Matthew and plays with him, builds blocks with him, and reads stories to him. Evidence reflects the three boys not only have a common childhood, they also have established a sibling relationship.

3. At the time the trial court made its decision, Mother had not yet given birth to her second child.