2002 SD 78

**Heather HATHAWAY, f/k/a Heather Bergheim, Plaintiff and Appellee,**

v.

**Jody M. BERGHEIM, Defendant and Appellant.**

**No. 22020.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 2002.

Reassigned May 22, 2002.

Decided July 2, 2002.

John S. Theeler, Trudy A. Morgan of Morgan, Theeler, Wheeler, Cogley & Petersen, Mitchell, South Dakota, Attorneys for plaintiff and appellee.

Wilson M. Kleibacker of Lammers, Lammers & Kleibacker, Madison, South Dakota, Attorneys for defendant and appellant.

SABERS, Justice (on reassignment).

[¶ 1.] Jody Bergheim filed a motion seeking custody of his eight-year-old son, Christian. The trial court denied the motion, determining that Christian should remain with his mother, Heather Hathaway. Jody appeals and we affirm.

### FACTS

[¶ 2.] Heather and Jody grew up in Madison, met in high school, and married in 1990. He farmed and worked for a livestock auction business. She worked in a grocery store while attending college.

[¶ 3.] Christian was born May 13, 1992. The parties separated in October 1992 because of financial difficulties. Their divorce became final on March 9, 1993, and the parties received joint custody of Christian.

[¶ 4.] Since the divorce, Jody, whose current income is over $40,000, has paid $105 per month for Christian's support. Heather worked several jobs to support herself and Christian, continued to attend college, and was Christian's primary caregiver. Jody has always been faithful about visitation and fully involved in Christian's activities, school and church.

[¶ 5.] On February 12, 1994, Heather married Stephen McComish. Heather and Stephen's son, Michael, was born on September 6, 1994. Because of Stephen's absence, the two divorced on March 20, 1996. Heather was awarded actual physical custody of Michael.

[¶ 6.] In the spring of 1998, Heather received her bachelor of science degree in information systems. On August 13, 1998, she married Brent Hathaway. It was the third marriage for both. Heather, who had lived in Madison since 1979, and the boys moved to Brent's home by Chester, South Dakota. Heather worked for the Harrisburg School District while Brent continued selling cars in Madison.

[¶ 7.] On July 1, 1999, Heather became the information systems coordinator for Mitchell Technical Institute (MTI). Her salary increased by $8,000 and she considered it a career advancement. After one year at MTI, Heather and Brent decided to move to Mitchell and scheduled the

move for summer 2000. They believed the family would benefit from eliminating two commutes and living and working in the same town where the children attended school.

[¶ 8.] Because of the move, Heather allowed Jody to have Christian for the entire summer rather than the four weeks allotted in the divorce decree. Michael spent the summer with Stephen. The boys' contact with each other was minimal. Each did well.

[¶ 9.] Christian and Michael returned to Heather's care when school started in Mitchell. Jody and Stephen filed motions for change of custody. Each expressed the same concerns. They believed Heather provided an unstable environment for the children because of her many moves and jobs, her relationships with many men and what they considered to be her unstable third marriage.

[¶ 10.] Jody and Stephen's motions were tried in one proceeding. Dr. Andre B. Clayborne, a licensed professional counselor, prepared custody home study evaluations. He concluded that Michael should remain with Heather. He noted that: "Michael reported having a very close relationship with his brother [Christian.] Indeed, according to Michael, he and [Christian] share a lot together and he really enjoys being with his brother."

[¶ 11.] Christian told Dr. Clayborne that he wanted to live with Jody. In recommending that primary custody of Christian be awarded to Jody, Dr. Clayborne noted that while both parents were effective, Jody offered more stability and involvement. He believed Heather and Jody would cooperate in allowing substantial contact between Michael and Christian.

[¶ 12.] The trial court found that Heather, as primary caretaker, provided appropriate education, recreation, care, parental love, affection and guidance. It found that Christian and Michael have a "closely bonded sibling relationship." It also found that Jody demonstrated a strong relationship with Christian and a stable lifestyle. Of the three parents involved, the court found that Jody was the best, followed by Heather. Stephen was "the worst."

[¶ 13.] The trial court concluded that, while it was in the best interests of Christian individually to be with Jody, it was in his and Michael's best interests to remain with Heather.

**STANDARD OF REVIEW**

[¶ 14.] "The primary determination in a custody dispute is to ascertain the best interest of the child." *Price v. Price,* 2000 SD 64, ¶ 18, 611 N.W.2d 425, 430 (citing *Fuerstenberg v. Fuerstenberg,* 1999 SD 35, ¶ 22, 591 N.W.2d 798, 806 (citations omitted)). "Trial courts possess broad discretion in deciding the best interests of a child; their decisions will only be disturbed upon a finding of abuse of discretion." *Fuerstenberg,* 1999 SD 35 at ¶ 22, 591 N.W.2d at 807 (citations omitted).

[¶ 15.] **WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING JODY'S MOTION FOR CHANGE OF CUSTODY.**

[¶ 16.] Jody argues that the trial court abused its discretion in denying his motion for change of custody because it was in the best interests of Christian to be with him. He argues that the trial court's finding that it was in the best interests of Christian individually to be with him, should override the trial court's finding that it was in the best interests of both Christian and Michael to remain with Heather. He argues that the trial court allowed the rule regarding the separation of siblings to override Christian's best interests.

[¶ 17.] The trial court concluded in part:

The [c]ourt determines that it is in Christian's, individually, best interest that custody be changed to his father Jody Bergheim, but that [it] is in the best interest of Michael McComish, individually, to remain with his mother[,] Heather Hathaway.

The [c]ourt determines that there are no compelling reasons to separate the siblings, Christian Richard Bergheim and Michael Thomas McComish. Therefore, it is in the best interest of both children as siblings to remain in the custody of their mother, Heather Hathaway.

[¶ 18.] When it addressed the parties, the court explained:

I believe largely, like Mr. Clayborne did, that it's in the best interests of Christian to be with his father. I believe that it's in the best interests of Michael to be with his mother. I believe that it is in the best interests of Michael to have Christian living with him. We have a clear conflict between what is in Michael's best interests to have Christian [and] what is Christian's best interests to have his father. That's the reason why South Dakota put in the provision that there has to be compelling reasons to separate children and it still is in the best interests of the children. I weigh the best interests of Michael and Christian and believe that Christian should remain with his mother, and that Michael should remain with his mother. I do that quite hesitantly because I do believe it is in the best interests of Christian to be with his father. I think the loss of Michael would be significant but not damaging. I believe the loss to Michael of Christian would be damaging to Michael. The one thing that those two children have is each other. And so

the [c]ourt will order that the children remain in the custody of their mother.

[¶ 19.] In determining the best interests of a child, the court must consider the child's "temporal, mental and moral welfare." SDCL 25–4–45; *Fuerstenberg*, 1999 SD 35 at ¶ 22, 591 N.W.2d at 806 (citations omitted). The trial court may consider these factors in determining which parent should have primary care of the child: "(1) parental fitness; (2) stability; (3) primary caretaker; (4) child's preference; (5) harmful parental misconduct; (6) separation of siblings; and (7) substantial change in circumstances." *Price*, 2000 SD 64 at ¶ 18, 611 N.W.2d at 430. These factors serve as guidelines and the trial court need not address all of them. The trial court's decision regarding custody, however, "should be 'balanced and methodical' and should be based on 'the best interest of children and not the shortcomings of the custodial parent.'" *Id.* at ¶ 56 (citing *Fuerstenberg*, 1999 SD 35 at ¶ 35, 591 N.W.2d at 810) (internal citations omitted).

[¶ 20.] The trial court considered each of these factors and determined what was in the best interests of Christian. It found that Heather was a fit parent and Christian's primary caretaker. It found that there were no compelling reasons to separate the siblings, Christian and Michael, and that, therefore, it was in the best interests of both children as siblings to remain in the custody of their mother. In other words, even though it might have been in the best interests of Christian, individually, to be with his father, when all things are considered, it was in his best interests to be with his brother and his mother, and not his father.

[¶ 21.] The trial court did make a determination of Christian's best interests. It found that in these circumstances it was in the best interests of both children as

siblings to remain in the custody of their mother. There is no real need to unsettle the settled custody situation and the settled custody law.

[¶ 22.] Jody has failed to show that the trial court abused its discretion in determining that custody of Christian should remain with Heather. Therefore, we affirm.

[¶ 23.] AMUNDSON and KONENKAMP, Justices, concur.

[¶ 24.] GILBERTSON, Chief Justice, and GORS, Acting Justice, dissent.

[¶ 25.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court did not participate.

GILBERTSON, Chief Justice (dissenting).

[¶ 26.] I respectfully dissent. The best interests of the child as an individual person has been, and should continue to be, the standard by which child custody determinations are to be made by a trial court.

[¶ 27.] The trial court concluded that it was in Christian's individual best interest to change his custody to his father, Jody. It also concluded that there was no compelling reason to separate Christian from his half-brother Michael. As a result, it ultimately concluded that it was in the best interests of both siblings to remain in their mother's custody. The trial court's two conclusions regarding Christian's best interests are inconsistent with each other. Accordingly, the case should be reversed and remanded.

[¶ 28.] Court involvement and supervision in child custody determination dates back to our very first territorial code:

In an action for divorce, the court may, before or after judgment, give such direction for the custody, care and education of the *children* of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.

1877 Dakota Territorial Civil Code § 72 (emphasis added). Although the specific language of the statute placed no express limits on judicial discretion, the earliest cases on this issue clearly declare that the best interests of the child are controlling as "[t]he rights of either or both parents are subservient to those of the child." *Wallace v. Wallace*, 26 S.D. 229, 235, 128 N.W. 143, 145 (1910).

In a divorce case the children are, and continue to be, virtually wards of the court. It is the welfare of the children that the court is concerned with, not the wishes of either of the parents[.]

*Houghton v. Houghton*, 37 S.D. 184–89, 157 N.W. 316, 317 (1916) (internal citation omitted).

[¶ 29.] Beginning with *Mayer v. Mayer*, 397 N.W.2d 638, 642 (S.D.1986), this Court declared, "[i]t is universally recognized that in the absence of compelling reasons to the contrary, the best interest of siblings require that they be raised together whenever possible." *See also Adam v. Adam*, 436 N.W.2d 266 (S.D. 1989); *Olson v. Olson*, 438 N.W.2d 544 (S.D.1989); *Schmidt v. Schmidt*, 444 N.W.2d 367 (S.D.1989). This doctrine was expanded to include half-siblings. *Friendshuh v. Headlough*, 504 N.W.2d 104 (S.D. 1993). Finally, in *Mitzel v. Black Cloud–Walberg*, 511 N.W.2d 816 (S.D.1994), in a 3–2 decision issued on February 2, 1994, this Court held that the no split siblings rule had been violated because while the trial court found that "unique" circumstances existed for splitting half-siblings, " '[u]nique' does not equate with 'compelling.' " *Mitzel*, 511 N.W.2d at 818.

[¶ 30.] It is not mere coincidence that the 1994 Legislature amended SDCL 25–

4–45 for the first time since its enactment back in 1877.

> In such action for divorce, the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time, vacate or modify the same. *In awarding the custody of a child, the court shall be guided by consideration of what appears to be for the best interests of the child in respect to the child's temporal and mental and moral welfare.* If a child is of a sufficient age to form an intelligent preference, the court may consider that preference in determining the question. As between parents adversely claiming the custody, neither parent may be given preference over the other in determining custody.

1994 SDSessL ch 192 (emphasis added). Relevant to this case are three important changes brought forth by this amendment. First, the best interests of the child standard is now codified. Second, the word "children" in the plural which was previously used in this code section, now becomes "child" in the singular. Third, there is no codification of the "compelling interests" rule that became ever more pervasive since our 1986 *Mayer* decision. Thus, this is a clear legislative mandate that a determination of the best interests of a child is to be based solely on that child's interests alone and not blended into what may or may not be the best interests of other children of the marriage or relationships.

[¶ 31.] "The primary determination in a custody dispute is to ascertain the best interest of the child." *Price v. Price,* 2000 SD 64, ¶ 18, 611 N.W.2d 425, 430. "Trial courts possess broad discretion in deciding the best interests of a child; their decisions will only be disturbed upon a finding of abuse of discretion." *Fuerstenberg v.* *Fuerstenberg,* 1999 SD 35, ¶ 22, 591 N.W.2d 798, 807.

[¶ 32.] "Although keeping siblings together is generally considered to be the better practice, the effect of separating siblings from each other is just one of several factors courts consider in determining the best interests of the children." *Pace v. Pace,* 22 P.3d 861, 867–68 (Wyo. 2001). These factors include: 1) parental fitness; 2) stability; 3) primary caretaker; 4) child's preference; 5) harmful parental misconduct; 6) separation of siblings; and 7) change in circumstances, substantial or otherwise. *Price,* 2000 SD 64 at ¶ 18, 611 N.W.2d at 430. Thus, the general rule against splitting siblings cannot be elevated above all factors, but must be weighed in conjunction with them. *Crouse v. Crouse,* 552 N.W.2d 413, 419 (S.D.1996). "Keeping siblings together is a splendid aspiration, but it cannot override the controlling questions of their best interests." *Id.*

[¶ 33.] Here the trial court concluded that there had been a substantial change in circumstances and that Christian's best interests were served by awarding custody to his father. It then concluded that it was in the best interests of both half-siblings to remain with their mother. It, in effect, used the general rule against splitting custody to trump what it determined was Christian's best interest. If it was, in fact, in Christian's best interest to be in his father's care, that provides the compelling reason to split custody. As merely one factor in determining a child's best interest, the general rule against splitting siblings, "must yield to the paramount principle that the best interests of each individual child must be the determining factor in custody decisions." *Haag v. Haag,* 336 Pa.Super. 491, 485 A.2d 1189, 1193 (1984).

[¶ 34.] A rule adopted with good intentions to be a guide to trial courts as to what constitutes the best interests of an individual child has now taken on a life of its own. Rather than the flexible analytical tool it was intended to be, it now has become a wooden barrier that must be vaulted before the best interests of the child can be addressed.

[¶ 35.] When applied to today's world of "his kids, her kids, their kids," either in and out of a marriage setting, it becomes even more unworkable. "Importantly, the traditional 'Cleaver' family is becoming less and less common in contemporary society. As society changes, some of our laws become antiquated and fail to provide just results." *Meldrum v. Novotny*, 2002 SD 15, ¶ 66, 640 N.W.2d 460, 473 (Amundson, J., concurring specially).

[¶ 36.] We will never get a clearer example of the negative effect this rule now exercises on the best interests of the child than in this case. The trial court found:

> The [c]ourt determines that it is in Christian's, individually, best interest that custody be changed to his father Jody Bergheim, but that [it] is in the best interest of Michael McComish, individually, to remain with his mother, Heather Hathaway.
>
> The [c]ourt determines that there are no compelling reasons to separate the siblings, Christian Richard Bergheim and Michael Thomas McComish. Therefore, it is in the best interest of both children as siblings to remain in the custody of their mother, Heather Hathaway.

[¶ 37.] This "rule" now violates the directions of SDCL 25–4–45 and its standard of best interests of the child. It is the best interests of Christian and Christian alone that control where he should reside, not Christian and "his kids, her kids and their kids." Admittedly, the current state of the "no split siblings" rule can free the trial courts from having to make difficult custody decisions that require the wisdom of Solomon. It is certainly much easier to determine: 1) are there siblings or half-siblings and, if so, 2) are there compelling reasons to split them? However, as the children are wards of the court, the goal should not be bright line rules, but rather a consistent, although at times difficult, determination of what constitutes the best interests of the child.

[¶ 38.] In this case, the order appealed from should be reversed and the case remanded for a redetermination of Christian's best interest, giving the separation of siblings' issue its proper weight and no more. For the above reasons I respectfully dissent.

[¶ 39.] GORS, Acting Justice, joins this dissent.