2003 SD 78

**The PEOPLE of the State of South Dakota in the Interest of C.G.(H.), T.N., and M.G., Minor Children,**

**and Concerning S.G. and T.G., Respondents,**

and

**M.N., Interested Party.**

No. 22590.

Supreme Court of South Dakota.

Considered on Briefs on May 28, 2003.

Decided July 9, 2003.

Jennifer N. Coleman of Dakota Plains Legal Services, Rapid City, for respondent and appellant S.G.

Glenn Brenner, State's Attorney and Roxanne Boettcher, Deputy State's Attorney, Rapid City, for appellee State of South Dakota.

Charles J. Mickel, Rapid City, for M.N. interested party and appellee.

PER CURIAM.

[¶ 1.] S.G. (Mother) appeals the trial court's grant of physical custody of T.N. to her father M.N. Mother contends the trial court abused its discretion by separating T.N. from her half siblings, C.G.(H) and M.G., without compelling reasons. We affirm.

FACTS AND PROCEDURE

[¶ 2.] On August 1, 2001, Mother and her husband T.G. were arrested on drug charges following a raid of their residence in Rapid City, South Dakota. An active methamphetamine lab was found in the basement of the home. The children, C.G. and T.N., were present at the time of the raid and resided in the home. The two children were taken into protective custody. The children have two different fathers. T.N. was six years old at the time of removal and her father is M.N. (Father). C.G.(H) was three years old at the time of removal and her father is T.G. Mother was also five months pregnant with M.G. at the time of her arrest. M.G.'s father is also T.G.

[¶ 3.] Mother tested positive for methamphetamine.[1] Mother was arrested and placed in detox on a 90–day involuntary commitment. T.N. was placed with Father who resided in Custer, South Dakota. C.G.(H.) was placed with his paternal grandparents. Upon birth, M.G. was also placed with the paternal grandparents.

[¶ 4.] Mother was indicted on charges of conspiracy to commit unauthorized manufacture of controlled substance, possession of controlled substance, keeping a place for use or sale of a controlled substance, and possession of drug paraphernalia. Mother pleaded guilty to conspiracy to commit an unauthorized manufacture of controlled substance, a class 4 felony. She was sentenced to three years in the state penitentiary.[2]

[¶ 5.] Mother entered into a family service agreement with DSS. The agreement identified risk factors for Mother's failure to provide for the basic needs of the children, possible drug and alcohol problems, day-to-day home life stability problems, and depression. By all accounts, Mother performed admirably in meeting the goals set for her by the Department of Social Services (DSS) including: completing counseling, following the conditions of her aftercare, passing all of her UA's, gaining full-time employment and completing educational classes. However, DSS had concerns regarding Mother's future stability, especially since her husband's release from prison.

[¶ 6.] T.N.'s father, M.N., met Mother when she was 18 years old and he was 22 years old. Mother claimed that Father purchased alcohol for her and then raped her after she passed out. She maintained that her parents forced her to live with him following the birth of T.N. Mother alleged Father physically and emotionally abused her. Mother also alleged that Father mistreated T.N. and that his home

---

1. Mother testified that she inadvertently took methamphetamine when her husband put methamphetamine in cold capsules. She admitted to voluntary use on other occasions. The trial court found her testimony not credible on this issue.

2. T.G., the father of the other two children, was charged in federal court and received a 23 month sentence.

was defective. Father denied all of these allegations. The trial court specifically found Mother's testimony not credible as it related to these allegations. The DSS worker and child advocacy volunteer investigated and determined that allegations of Father's mistreatment of T.N. were unfounded.

[¶ 7.] T.N. began residing with Father the first week of August 2001. She attended school in Custer earning above average grades. Father enrolled T.N. at the YMCA; she developed friendships in Custer and was involved in Girl Scouts and Tae Kwon Do. Father lives in his own home in the country with his family living nearby. T.N. has had regular visitation with her siblings and Mother while in her Father's care. When T.N. resided with Mother, Father was only allowed sporadic visitation and the matter had to be referred to a mediator. While in Mother's care, T.N. was absent from school 18 days and tardy 41 times in a year. While in Father's care in Custer, she was absent five days (three for a funeral) and tardy none. Custer school officials indicated that T.N. appeared clean and well kept and seemed happy and well cared for emotionally.

[¶ 8.] The DSS worker testified that Father was doing a good job with parenting T.N. and that the two got along very well. All the reports relating to Father's care of T.N. were positive. The reports relating to Mother's care of T.N. reflected concerns with Mother's ability to provide a safe and stable environment and concerns regarding her prior depression and anxiety. DSS recommended continued custody with Father as the least restrictive alternative in the best interests of the child.

[¶ 9.] A child advocacy volunteer visited both Mother and Father's home. The volunteer determined that both parents loved T.N. very much and that T.N. was a happy child. T.N. advised the volunteer that she preferred living with her Mother and that she missed her siblings. Initially, the volunteer indicated that it was her opinion that T.N. should be with Mother. Subsequently, the volunteer changed the recommendation in light of what she viewed as Mother's manipulative behavior and false allegations concerning Father. However, at the dispositional hearing the volunteer again reversed field and recommended that T.N. be placed with Mother. A family advocate from Custer, Misty Badgett, also visited with T.N. and reported to the volunteer that in her opinion T.N. should be in the custody of Mother.

[¶ 10.] Dr. Leslie Fiferman, a clinical psychologist, interviewed T.N. on four occasions. Dr. Fiferman found that T.N. was a well adjusted young girl who was doing very well given the situation. Dr. Fiferman testified that it would be disconcerting to place T.N. in an environment other than the one she was currently in with Father. Dr. Fiferman also testified that he did not ask T.N. where she wanted to live because that answer can be a product of manipulation. Dr. Fiferman recommended that custody remain with Father.

[¶ 11.] The trial court returned legal and physical custody of C.G.(H) and M.G. to Mother. However, the trial court continued jurisdiction over the two children for three months in order to provide a safety net should Mother falter. While the trial court awarded joint legal custody of T.N. to Mother and Father, it determined that physical custody of T.N. should remain with Father as the least restrictive alternative commensurate with the best interests of the child. The trial court found that compelling reasons existed to separate the half-siblings based on the following: (1) Father had demonstrated a stable lifestyle; (2) T.N. had successfully

resided with Father for a year; (3) T.N. had excelled in school and achieved an excellent attendance record; (4) T.N. was well adjusted to Father's home; (5) T.N. was not at an age where her preference was determinative; (6) Father was more likely to encourage meaningful contact between T.N. and the other parent; (7) Mother had repeatedly brought unfounded allegations of Father's mistreatment of the child; and (8) Mother's actions brought this case into the system when she chose to reside with her children in a home with an active methamphetamine lab in the basement.

## STANDARD OF REVIEW

[¶ 12.] We review a trial court's findings of fact in an abuse and neglect proceeding under a clearly erroneous standard. *In re S.A.H.*, 537 N.W.2d 1, 5 (S.D. 1995). In applying this standard, this Court does not determine whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed. *Id.* "Trial courts possess broad discretion in deciding the best interests of a child; their decisions will only be disturbed upon a finding of abuse of discretion." *Fuerstenberg v. Fuerstenberg*, 1999 SD 35, ¶ 22, 591 N.W.2d 798, 807 (citations omitted).

## ANALYSIS

### ISSUE

[¶ 13.] **Whether the trial court abused its discretion when it granted physical custody of T.N. to Father.**

[¶ 14.] When a parent's rights are not terminated at the dispositional hearing, SDCL 26–8A–22 provides a number of options available to the trial court, including granting custody of the child to the other parent. "In deciding which of these options is the least restrictive alternative, the question is viewed from the child's perspective." *Matter of C.W.*, 1997 SD 57, ¶ 18, 562 N.W.2d 903, 906. "In determining the best interests of a child, the court must consider the child's temporal, mental and moral welfare." *Hathaway v. Bergheim*, 2002 SD 78, ¶ 19, 648 N.W.2d 349, 352. "The trial court may consider these factors in determining which parent should have primary care of the child: (1) parental fitness; (2) stability; (3) primary caretaker; (4) child's preference; (5) harmful parental misconduct; (6) separation of siblings; and (7) substantial change in circumstances." *Id.*

[¶ 15.] After considering these factors the trial court found physical custody of T.N. with Father to be the least restrictive alternative commensurate with the best interests of the child. The trial court recognized that while Mother had been the primary caretaker prior to her arrest, Father has been the primary caretaker of T.N. for one year as of the date of the dispositional hearing. Testimony indicated that both Father and Mother were fit parents. For the two children returned to Mother, the trial court determined it was in their best interests to retain jurisdiction in order to insure Mother was capable of properly caring for them on a consistent basis. Certainly, the trial court was concerned with Mother's ability to provide a stable home environment. Father clearly had demonstrated more stability. Mother is on strict supervision for her crime; and although she has performed remarkably well, whether she will continue when released from supervision is unknown. It cannot be disputed that Mother's decision to have these children in a home with an active methamphetamine lab in the basement endangered their safety and was harmful parental misconduct. In addition,

while a child's preference is a consideration, SDCL 25–4–45 provides that the child must be of a sufficient age to form an intelligent preference before it can be considered. The trial court determined that T.N. was not of a sufficient age. After considering the appropriate factors, the trial court determined that compelling reasons existed for the separation of the half siblings. *Cf. Matter of C.W.*, 1997 SD 57 at ¶ 22, 562 N.W.2d at 907.

[¶ 16.] On these facts, the trial court was presented with a situation where the least restrictive alternative for two of the three children was returning the children to Mother with continued monitoring. However, with T.N. there was another alternative, placement of the child with Father. This decision is supported by the trial court's findings and was not an abuse of discretion.

[¶ 17.] Affirmed.

[¶ 18.] SABERS, KONENKAMP and MEIERHENRY, Justices, and WILBUR and VON WALD, Circuit Judges, participating.

[¶ 19.] VON WALD, Circuit Judge, for GILBERTSON, Chief Justice, disqualified.

[¶ 20.] WILBUR, Circuit Judge, for ZINTER, Justice, disqualified.