# IN THE COURT OF APPEALS OF IOWA

No. 19-1096
Filed January 23, 2020

**ROBERT EDWARD MELLER,**
      Plaintiff-Appellant,

**vs.**

**MERANDA R. HENDRICKSON,**
      Defendant-Appellee.
_____

      Appeal from the Iowa District Court for Story County, Angela L. Doyle,

Judge.


      Robert Meller appeals the order granting Meranda Hendrickson physical

care of the parties' minor child. **REVERSED AND REMANDED.**


      Eric G. Borseth of Borseth Law Office, Altoona, for appellant.

      Brian L. Kern of Kern Law Office, Colfax, for appellee.


      Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

Robert ("Bobby") Meller appeals the district court custody order, arguing the court erred by granting Meranda Hendrickson physical care of their minor child. We agree with the district court that the case presents "a close question," but we find the factors weigh in favor of Bobby having physical care.

### I. Background Facts and Proceedings.

Bobby and Meranda are the parents of one minor child, L.M., born in 2013.[1] These parents never married, but they, L.M., and Meranda's two teenage children from previous relationships, lived together in Colo, Iowa until the relationship ended. After that, Bobby stayed in Colo and Meranda moved to Colfax, Iowa in March 2015.

For three years after the breakup, Bobby and Meranda had an informal custody arrangement by which the parents had joint custody and shared physical care. But as the child neared kindergarten age, the shared care plan became unworkable as each wanted the child to attend school in their respective town.

In March 2018, Bobby commenced this custody action asking the court to award him physical care of the child. After a hearing on temporary matters, the district court found Bobby to be the more stable parent and awarded him temporary physical care of the child. The court gave Meranda liberal visitation. In the temporary order, the court noted, "Meranda should be given every opportunity

---

[1] L.M. is Bobby's only child and one of Meranda's four children. At trial, Meranda's other children were a fifteen-month-old child with her current fiancé and two teenaged children, ages seventeen and fourteen, from earlier relationships.

possible to demonstrate her worthiness to serve as primary custodian between now and the final resolution of the case."

The court held a two-day custody trial in April 2019. At the time of trial, L.M. was six years old and a kindergartner. By all accounts he was an active, happy boy. He struggled with speech and reading, and while he had made great improvements, school staff recommended he repeat kindergarten.

Bobby was thirty-seven years old at trial. He attained an associate's degree and worked full-time doing construction-equipment maintenance in Ames, earning a gross annual income of $31,200. Bobby has lived in the same house in Colo since the child was born. Although he lives in Colo and works in Ames, Bobby enrolled the child in the Nevada school system. Bobby was not in a serious relationship at the time of trial.

Bobby is an only child, and his parents also live in Colo. His parents have been actively involved with L.M., their only grandchild, since he was born. During the relationship, both parties benefitted from help by Bobby's mother, Edythe. She provided full-time child care, paid and unpaid, when the child was younger. After the parties' separation and because the child attends school, Edythe cares for the child before and after school while Bobby is at work. The child also spends the night at his grandparents' home once or twice per week.[2] For a period of about four weeks after Edythe had knee surgery, the child slept at his grandparents'

---

[2] Because his school has a late start time on Monday mornings, the child often would stay at the grandparents' home on Sunday night to sleep later in the morning.

house because Edythe could not drive. Edythe would get the child ready for school, and his grandfather would transport him to and from school.

Apart from providing childcare, and even when these parties were together, Edythe provided support in the child's life in other ways. For example, Edythe took the child to doctor appointments. Lately, she assumed an active role in his education. Bobby listed Edythe, not Meranda, as an emergency contact for the child. Edythe, not Meranda, was included on many emails about the child's education and progress with the speech and reading specialists. Meranda finally contacted the school directly in to be included in discussions about the child's education.

Meranda was thirty-five at the time of trial, had a GED, and worked thirty to thirty-five hours per week at a grocery store in Colfax, earning a gross annual income of $15,600. She works from eight or nine in the morning until between two and five at night. When she could not care for the child, she has a friend who provides daycare. Meranda is engaged to Howard Williams, and the couple has a young child together. Howard has two other children. These children stay with Meranda and Howard every other weekend and once during the week.

Besides Bobby and Howard, during Meranda's adulthood she has had a series of serious relationships that ended in breakups and upheaval for her and her children. She broke up with the oldest child's father because of his substance-abuse issues, and she divorced the second child's father after he beat Meranda to the point of hospitalization. After that, she was married to another man for five years, but they divorced because the relationship "just didn't work out." Engaged to Howard since April 2017, the couple has not yet set a wedding date.

Meranda and Howard live together in the renovated house in Colfax with their young child, Meranda's two older children, as well as L.M. and Howard's two children when they are visiting. Altogether there are often six children in their house. The house was originally a two-bedroom, 676 square foot home, but a home remodel added four more bedrooms and about 1200 square feet of living space. While the home was being remodeled, the family lived in a camper on the property for a significant period of time.

At trial, Bobby and Meranda each had their complaints about the other's parenting. Bobby criticized Meranda's history of cycling through serious relationships, her living situation, and her lack of supervision and involvement with her children. He emphasized his arguments by pointing to an incident where the child fell into a pool while unsupervised and another incident where the child was bit by a dog at the maternal grandmother's home. Meranda criticized Bobby's parents' level of involvement in the child's life and Bobby's consequent lack of involvement. Meranda claimed that Bobby gave the child ill-fitting clothing and did not require him to wear a seatbelt. Shortly before trial, she reported bruising she found on the child to the police, which she claimed the child told her was from Bobby squeezing him.[3] She also discussed an incident where Bobby's dog scratched the child's face.

After a two-day trial in April 2019, the court found both parents were competent caretakers and described the case as a close call. In the end, the court

---

[3] The report went unfounded, and Bobby contends the child was clumsy, regularly had bruising, and the call to police amounted to pre-divorce trial strategy by Meranda.

determined more factors weighed in favor of Meranda having physical care of the child. Bobby appeals.

## II. Standard of Review.

Because custody matters are tried in equity, our review of these proceedings is de novo. Iowa R. App. P. 6.907. "Although we give weight to the factual findings of the district court, we are not bound by them." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016); *see also* Iowa R. App. P. 6.904(3)(g). "Physical care issues are not to be resolved based upon perceived fairness to the *spouses,* but primarily upon what is best for the *child.*" *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.*

## III. Analysis.

Bobby challenges the district court's award of physical care to Meranda. "[T]he main distinction between joint physical care and primary physical care with liberal visitation rights is the joint decisionmaking on routine matters required when parents share physical care." *In re Marriage of Hynick*, 727 N.W.2d 575, 580 (Iowa 2007). In determining a physical-care award, courts will consider the factors listed in Iowa Code section 598.41(3) (2018).[4] The controlling consideration is the best

---

[4] Iowa Code section 589.41(3) provides in relevant part,
> In considering what custody arrangement . . . is in the best interest of the minor child, the court shall consider the following factors:
> a. Whether each parent would be a suitable custodian for the child.
> b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.

interests of the child. *Hansen*, 733 N.W.2d at 695–96. When determining who will have physical care of the child, we will consider "stability and continuity with an eye toward providing the [child] with the best environment possible for [the child's] continued development and growth." *Id.* at 700. "[T]he factors of continuity, stability, and approximation are entitled to considerable weight." *Id.*

From the written record, we note factual conflicts on each side, but the district court heard the witnesses and offered observations supporting the decision. In a detailed ruling setting out specific positives and negatives for both parents, the court listed Meranda's strengths as (1) flexible employment and close proximity to the school, (2) maintaining the half-sibling connections, and (3) her open communication with Bobby. The court awarded Meranda physical care of the child. The district court based its decision on the paternal grandmother's extensive involvement in the child's life, Bobby's exclusion of Meranda from being involved in the child's education, Meranda's work schedule, and the child's ability to spend more time with his half-siblings if mainly in Meranda's care.

---

c. Whether the parents can communicate with each other regarding the child's needs.

d. Whether both parents have actively cared for the child before and since the separation.

e. Whether each parent can support the other parent's relationship with the child.

f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking in to consideration the child's age and maturity.

g. Whether one or both parents agree or are opposed to joint custody.

h. The geographic proximity of the parents.

. . . .

In particular, the trial court morphed Bobby's parental role into a co-parenting relationship with Edythe. The district court referenced the extensive time the child spent at the grandparents' home, including overnights, and criticized the grandmother's testimony about school decisions as "*we* enrolled him" and "*we* knew he desperately needed to have preschool." (Emphasis added.) The court found persuasive that Bobby listed his mother as the emergency contact at school rather than Meranda. And the trial court found fault with Bobby for failing to keep Meranda updated on school and other events as required by the temporary order. At the same time, the court opined both parents operated under a previous shared co-parenting agreement where neither questioned the ability of the other to care for the child appropriately.

It is apparent the court was troubled by Edythe's role. Given the long-term care role of the grandparents, however, it is not for us to rebuke that relationship as inappropriate when both parents have benefitted from that expanded role. *See In re Marriage of Welbes*, 327 N.W.2d 756, 758 (Iowa 1982) (rejecting criticism of the grandparents' expanded role and finding grandparents are preferred caretakers over strangers). It is appropriate to consider grandparent availability to assist a parent in caring for children as a factor in determining which parent should receive physical care. *Melchiori v. Kooi*, 644 N.W.2d 365, 369 (Iowa Ct. App. 2002) ("We agree that grandparents may be better childcare providers than strangers and their availability to their child in assisting with childcare may be a factor in assessing a custodial claim."); *see also Welbes*, 327 N.W.2d at 758 (affirming grant of physical care of child to father, who had "assumed the responsibility of caring for her with the assistance of his parents"); *In re Purscell*, 544 N.W.2d 466,

469 (Iowa Ct. App. 1995) (placing physical care of the child with father who lived with his parents and who would receive assistance from them in caring for the child). For the child's entire life, Edythe supported the child's wellbeing without criticism by either parent. That stability is important.

Because stability and continuity of caregiving are important considerations in a custody decision, a history of successful caretaking by the parent "is a strong predictor that future care of the [child] will be of the same quality." *Hansen*, 733 N.W.2d at 697. Here we have two main concerns. First, Meranda has a history of unstable relationships, and her older children have been forced to move many times. Since L.M.'s birth, Meranda has lived with Bobby, her mother, and now her current fiancé. With Bobby, the child knows only one home since his birth. The district court looked past this history and discounted Bobby's stable and long-standing family support system.

The second concern relates to the educational stability for the child. On this issue the trial court's main contention against awarding Bobby physical care related to his communication with Meranda about schooling status. Yet Bobby pushed for early educational intervention for the child, who by all accounts had significant delays with phonemic awareness skills, appropriate classroom behaviors, and speech issues. Because of the shared schedule, the child only attended preschool intervention on Bobby's custodial days—two days one week and three days the next week. On Meranda's custodial days, she continued in her daycare arrangement with a friend. The temporary order allowed Bobby to enroll the child in the Nevada school system for kindergarten.

Although Bobby did not always direct email updates to Meranda from the child's school, Meranda admitted receiving emails about the child and she attended school conferences. When she attended the initial back-to-school event, as a parent she could opt for involvement from that point forward. Email exhibits to Meranda show no surprise related to the additional testing and services at the school. Yet she claimed during trial she was left out of school decisions until February 2019. Contrary to the assertions about Bobby, from the time the school recommended that this child repeat kindergarten, and as of the time of trial, Meranda had not yet communicated with Bobby about this issue. Her lack of initiative related to the early childhood education is concerning. In contrast, Bobby, with the support of his mother, has been an advocate for the child. By all accounts, the child has been getting the services he needs and his speech and reading skills have improved while attending school in Nevada. Meranda's lack of involvement in the child's educational needs weighs against finding the child's best interests would be served in her physical care. *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974) (noting that the capacity of a parent to meet the child's educational needs is a factor to consider in best-interests determinations).

Finally, we acknowledge there is a strong interest in keeping siblings and half-siblings together, yet separation may better promote the long-term interests of the child. *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). The record lacks evidence that this six-year-old child has bonded to the fifteen-month-old half-sibling. Likewise, the older half-siblings are separated by eight and eleven years. *See Moses v. White*, No. 17-0823, 2017 WL 5185450, at *3 (Iowa Ct. App. Nov. 8, 2017) (finding step-sibling separated by six and nine years weighed against close

bond necessary to compel custody determination). Testimony also confirmed the teenaged half-siblings worked weekends when Meranda had visitation. No testimony established that separating the child from his half-siblings would harm his well-being.

While we believe both parents love their child and are suitable caregivers, we find Bobby is the superior parent to minister to the child's needs. After considering the relevant factors, we find Bobby established a strong interpersonal relationship with the child, the capacity to provide for educational needs of the child, and the continuation of a long-term stable and supportive environment until this action began. We grant Bobby physical care of the child, award visitation to Meranda as originally set out for Bobby, and remand for further orders related to child support.

## IV. Disposition.

For these reasons, we reverse the decision of the district court and remand for the entry of an order consistent with this opinion.

**REVERSED AND REMANDED.**